**Karen TRIMPER, Plaintiff–Appellant,**

v.

**CITY OF NORFOLK, VIRGINIA; Henry P. Henson, Defendants–Appellees.**

**No. 94–1547.**

United States Court of Appeals, Fourth Circuit.

Argued April 4, 1995.

Decided June 7, 1995.

---

**ARGUED:** Sebastian Kenneth David Graber, Cooperating Atty., ACLU Foundation of Virginia, Wolftown, VA, for appellant. Jacob Paul Stroman, IV, Deputy City Atty., Norfolk, VA, for appellees. **ON BRIEF:** Ste-

phen B. Pershing, Legal Director, ACLU Foundation of Virginia, Richmond, VA, and Jack E. Ferrebee, Cooperating Atty., ACLU Foundation of Virginia, Virginia Beach, VA, for appellant. Harold P. Juren, Deputy City Atty., Norfolk, VA, for appellees.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and BUTZNER, Senior Circuit Judge.

Affirmed by published opinion. Judge MURNAGHAN wrote the opinion, in which Judge NIEMEYER and Senior Judge BUTZNER joined.

## OPINION

MURNAGHAN, Circuit Judge:

On April 7, 1993, Appellant, Karen Trimper ("Trimper"), filed a lawsuit under 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Virginia, against Appellee, City of Norfolk, Virginia. In her complaint, Trimper alleged that Chapter 3 of the Norfolk City Code was unconstitutional under the First Amendment, both on its face and as applied to her distribution of leaflets on a public sidewalk contiguous to the main Norfolk Post Office. On May 12, 1993, Trimper accepted an Offer of Judgment from the City under Rule 68 of the Federal Rules of Civil Procedure, pursuant to which the City agreed to pay Trimper $100 plus costs as a judgment.

Trimper's lead counsel, Sebastian Graber ("Graber"), thereafter filed a motion for costs and attorney's fees, under 42 U.S.C. § 1988, seeking a total of $31,265.48 from the City. The district court, on March 25, 1994, granted the motion in part and denied it in part, ordering the City to pay Trimper $5,260.24 in attorney's fees and costs. On April 22, 1994, Trimper filed a timely notice of appeal from that decision. We affirm, finding that there was no abuse of discretion by the district court.

### Factual Background

The instant appeal arises from a dispute between Trimper and the City of Norfolk over the district court's decision to award $5,206.24 in attorney's fees and costs to

Trimper under 42 U.S.C. § 1988. The dispute is based on the following facts.

On April 15, 1992, Trimper and other members of the National Organization for the Reform of Marijuana Laws ("NORML"), stood on a public sidewalk contiguous to the main Norfolk Post Office distributing leaflets. Police officers confronted NORML members and informed them that Chapter 3 of the Norfolk City Code prohibited their activities. At that time, Chapter 3 of the Code required permits for the distribution of handbills, and gave the Chief of Police of Norfolk authority to revoke such permits at his discretion.

In March of 1993, Trimper called the Norfolk Police Department to inquire about how NORML members might distribute their materials on the sidewalk contiguous to the post office on tax day, 1993, without a threat of another confrontation by police. She was informed that prior to distributing the leaflets, she should come to the police station, fill out a permit application, and submit for advance review copies of the material intended for public distribution.

On March 16, 1993, Graber, Trimper's lead counsel, wrote to Norfolk City Attorney, Philip R. Trapani, stating that Trimper intended to leaflet on April 15, 1993, and inquiring about the impact of Chapter 3 of the Norfolk City Code on the proposed leafletting. The City Attorney responded by faxing Chapter 3 of the Code to Graber. On March 19, 1993, Graber informed the Chief of Police that the permit requirement as applied to Trimper in April 1992 and 1993, was unconstitutional, and asked whether Trimper risked being arrested if she distributed pamphlets on April 15, 1993. The same day, Graber sent the City Attorney a letter stating that Trimper intended to leaflet on Norfolk sidewalks, that Chapter 3 of the Code violated the First Amendment in various ways, and that Trimper intended to file a lawsuit against the City for enforcing Chapter 3. Graber also offered the City a settlement: that the City issue a public statement declaring the Code unconstitutional, promise to repeal the ordinance, pay $250 to anyone threatened with prosecution under the Code in April 1992, and pay the attorney's fees for

services rendered by Graber up to the time of settlement.

On March 19, 1993, the City Attorney rejected Graber's settlement offer, stating that he disagreed that the Code sections were unconstitutional. The City Attorney instead attempted to resolve the issue by informing Graber that the City had considered Trimper's correspondence a permit application, and had granted her permission to leaflet on tax day, 1993. On March 24, 1993, Graber sent the City Attorney and the Chief of Police letters stating that the Code still violated Trimper's constitutional rights, as the permit was valid only for April 15, 1993 and because the Code fully reserved the right of the Police Chief to revoke the permit at his discretion. The letter requested citations of any legal authority which would support the constitutionality of the Code and urged the City to reconsider Trimper's settlement offer or submit an offer of its own.

On March 26, 1993, the City Attorney sent Graber a letter stating that the City was reviewing the March 24, 1993 Supreme Court decision in *City of Cincinnati v. Discovery Network, Inc.*, —— U.S. ——, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993), for its potential impact on the Code's constitutionality. The letter requested that Trimper contact the City Attorney if she wished to leaflet in the interim, assuring Trimper that any such requests would be accommodated.

On April 2, 1993, the City Attorney initiated the formal process of repealing the relevant provisions of the Code. On April 6, 1993, the City Council voted to repeal Chapter 3. Because the April 6 meeting was a "policy meeting" only, however, the Council decided formally to adopt the ordinance repealing Chapter 3 at its next meeting on April 13, 1993.

On April 7, 1993, after not having heard from the City, Graber filed a lawsuit on Trimper's behalf, under 42 U.S.C. § 1983, in the United States District Court for the Eastern District of Virginia, requesting a preliminary injunction against the enforcement of Chapter 3 of the Norfolk City Code. On the same day, the City Attorney sent Graber a letter stating that based on the recent Supreme Court decision in *Discovery Network*, an ordinance had been drafted which would repeal Chapter 3 of the Code in its entirety. The letter also stated that the City Council likely would pass the ordinance at its next meeting on April 13, 1993, six days after the lawsuit was filed. On April 14, 1993, the City Attorney informed Trimper that Chapter 3 had been repealed by the City Council.

On April 15, 1993, Graber sent the City Attorney a letter stating that, as a result of the City's repeal of Chapter 3, Trimper no longer sought a preliminary or permanent injunction, but did intend to seek damages from the City. On April 21, 1993, Graber faxed the City Attorney a letter which stated that Trimper believed herself eligible for attorney's fees and costs under 42 U.S.C. § 1988, and informed the City Attorney that a settlement at that time might limit the City's liability to $15,000. The City Attorney made an Offer of Judgment to Trimper under Rule 68 of the Federal Rules of Civil Procedure, which awarded her $100 plus costs and expenses incurred to date, including attorney's fees, if any, as may be determined by the court on April 30, 1993. Trimper accepted the offer on May 12, 1993.

On June 21, 1993, Graber sent the City Attorney an offer of settlement regarding the issue of Trimper's costs, including attorney's fees. The offer called for Graber to receive a total of $11,880 in fees for 60 hours of his own labor at $175 per hour, compensation for eight hours of travel time at $75 per hour, and $780 for 13 hours of paralegal work at $60 per hour; for Mr. Pershing, an attorney for the American Civil Liberties Union who assisted Graber in the case, Graber requested $1,187.50 for 7.9 hours of labor, plus compensation for 3.2 travelling hours at $62.50 per hour; and for Mr. Ferrebee, local counsel assisting Graber in the case, Graber requested $1800 for 14.4 hours of labor at $125 per hour. The offer also called for Trimper to receive a total of $638.01 for expenses incurred by Graber and Ferrebee. After the City rejected the offer, Trimper offered to reduce the amount sought by $1000. The City again rejected the offer of settlement.

On July 30, 1993, Graber filed a motion for an award of attorney's fees and costs under 42 U.S.C. § 1988, seeking a total of $31,265.48 in fees and expenses. The motion included requests for the following: for Graber, $24,531.50 for 114.10 hours of labor at $215 per hour, $760 for 7.6 hours of travel at $100 per hour, $948 for 15.8 paralegal hours at $60 per hour, and $823 in expenses; for Ferrebee, $2540 in total fees at $125 per hour, plus expenses; and for Pershing, $1662.50 in fees at $125 per hour, plus expenses. The City defended on the ground that Trimper was not entitled to recover attorney's fees because she obtained only limited success in the lawsuit, and because the fees sought were unreasonably high, inadequately documented, and duplicative.

On March 25, 1994, the district court issued an opinion granting Trimper $5,260.24 in fees and expenses. In so holding, the court made the following findings: (1) Trimper was a "prevailing party" within the meaning of 42 U.S.C. § 1988 and thus was entitled to reasonable attorney's fees; (2) the issue of the Code's unconstitutionality was not complicated or novel, and thus the legal work necessary to prevail did not require any special skills; (3) Graber, at most, gave up earning $150 per hour from other clients; (4) Graber wasted a great deal of time researching cases with which he should have been familiar, and wasted time submitting unnecessarily lengthy memoranda to the court; (5) the bulk of the attorneys' involvement in the case came during the fees stage of the case rather than the merits stage of the case; and (6) the amount in controversy was not substantial. Thus, the court found the requested $215 per hour rate to be excessive, and instead determined that the hourly rate would be $100 per hour. The court additionally held that the hours reasonably expended be decreased by the extent to which the hours were duplicative, inadequately documented, and excessive; in particular, the court took into account that (1) the process of repealing the Code had already begun several days *before* the lawsuit was filed; (2) the services of three attorneys were not needed for the resolution of the case; (3) 2.3 of the hours which were spent on reviewing and copying documents and exhibits should be subtracted; (4) Graber should not recover fees for time spent producing letters to the Chief of Police after he had begun corresponding with the City Attorney; (5) the time spent drafting a lengthy motion for preliminary injunction was excessive (14–page complaint and 44–page memorandum), thus suggesting that the compensable fee hours should be reduced by 11.2 hours; (6) the time spent on client consults was excessive, and thus should be reduced by 2.45 hours; (7) Graber devoted an inordinate amount of time to seeking attorney's fees, and failed to make a reasonable settlement offer for fees and costs; and (8) the attorneys had not made a sufficient effort to minimize costs. Finally, the court found that Graber's travel costs, at a rate of $40 per hour, would be allowed, but that costs incurred in efforts to recover fees and costs would not be allowed to the extent that they exceeded 20 percent of the costs allowed for the merits phase of the case.

Accordingly, the district court found that the City would be liable for the following amounts: $4,015 for 40.15 hours expended by Graber on the merits phase of the case billed at a rate of $100 per hour; $33 for 1.1 paralegal hours expended during the merits phase of the case billed at $30 per hour; $31.53 for phone charges incurred by Graber during the merits phase of the case; and $304 for 7.6 hours of travel to and from Norfolk at a rate of $40 per hour. Thus, a total of $4383.53 in fees and costs incurred during the merits phase of the case was awarded. Additionally, the court awarded $876.71 in fees and costs incurred during Trimper's efforts in the fees phase of the case, an amount equalling 20 percent of the fees and costs awarded for the merits phase of the case. In sum, the court awarded $5260.24 in attorney's fees and costs to Trimper. Trimper filed a timely notice of appeal from the decision on April 22, 1994.

*Discussion*

Trimper alleges, on appeal, that the district court abused its discretion in allowing for the recovery of only $5,260.24 in fees and costs under 42 U.S.C. § 1988, rather than the $31,265.48 sum requested by Graber on her behalf. Specifically, Trimper contends that

the court erred in four ways: (1) the district court reduced *both* the number of compensable hours and the hourly rate, and thus imposed an impermissible "double reduction" in calculating the fee award; (2) the district court erred in refusing to award fees for services rendered by Graber's co-counsel in the case; (3) the district court erred in calculating the appropriate amount of fees and expenses incurred in the fees phase of the lawsuit by simply multiplying by 20 percent the fees awarded on the merits phase of the lawsuit; and (4) the district court erred in disallowing all but $31.53 in expenses. We affirm, finding that the district court did not abuse its discretion.

Section 1988 of Title 42 of the United States Code provides for the awarding of attorney's fees and costs incurred in successful lawsuits brought to enforce the civil rights provisions of the United States Code. In particular, section 1988 provides:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of the title, ... the court, *in its discretion,* may allow the *prevailing party,* other than the United States, a *reasonable* attorney's fee as part of the costs.

42 U.S.C. § 1988(b) (emphasis added).

█ In determining a "reasonable" attorney's fee under section 1988, this Court has long held that a district court's discretion must be guided strictly by the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974). *See Daly v. Hill,* 790 F.2d 1071, 1077 (4th Cir.1986). The twelve *Johnson* factors are: (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required properly to perform the legal service; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the

"undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases. *Daly,* 790 F.2d at 1075 n. 2 (noting that the *Johnson* approach has been approved by Congress and by the Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 434 n. 9, 103 S.Ct. 1933, 1940 n. 9, 76 L.Ed.2d 40 (1983)). Our review of a district court's decision in awarding fees is for an abuse of discretion. *Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 174 (4th Cir.1994).

In *Daly v. Hill,* 790 F.2d 1071 (4th Cir. 1986), we fully discussed the factors that a district court must consider in determining a reasonable attorney's fee under § 1988. In that case, the district court had awarded attorney's fees to the plaintiff in a § 1983 police brutality case, but in doing so, had disallowed certain requested hours and expenses, disallowed fees to the lead counsel's law partner, and reduced the allowable hourly rate; additionally, the district court had declined to adjust the fee upward to account for the excellent results obtained, and refused to grant the plaintiff compensation under the contingency fee agreement. 790 F.2d at 1074. Specifically, the district court had, in applying the *Johnson* factors, found that the case was not novel or difficult, that the skill required in the case was not greater than that usually required of the attorneys, that the attorneys were not precluded from other employment by taking the case, and that the results of the underlying civil rights lawsuit were satisfactory. *Id.* at 1075.

█ The Fourth Circuit, affirming in part and reversing in part, noted that the underlying purpose of section 1988, which must always guide the awarding of fees, is to ensure effective access to the judicial process for persons with civil rights grievances without simultaneously producing windfalls to the attorneys. 790 F.2d at 1076, 1077. Under that rubric of analysis, the Court set forth the factors which must guide a district court's discretion in awarding the fees. First, the Court noted that a district court must apply the *Johnson* factors in initially calculating the reasonable hourly rate and the reasonable number of hours expended by the attorney; the resulting "lodestar" fee,

which is based on the reasonable rate and hours calculation, is "presumed to be fully compensatory without producing a windfall." *Id.* at 1078.

Second, the *Daly* Court addressed the importance of affording discretion to district courts in calculating such awards under *Johnson.* In particular, the Court held:

> In addressing the reasonableness of the fee award in the case at bar, we are mindful of the Supreme Court's admonition in *Hensley* that "[a] request for attorney's fees should not result in a second major litigation." The Court emphasized that "the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters."

*Id.* at 1078–79, *quoting Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941. Indeed, the Court emphasized:

> [W]e are not entitled to disturb a district court's exercise of discretion even though we might have exercised that discretion quite differently. The fixing of attorney's fees ... is primarily the task of the district court. We have promoted uniform reasonableness in fixing attorney fees by identifying general standards to guide the decisionmaker.... Beyond providing such standards, however, the appellate court's role in achieving uniformity on a case-by-case basis is limited. It is important that the district court remain primarily responsible for resolving fee disputes, because it is in the better position to evaluate the quality and value of the attorney's efforts. The very discretion basic to the trial court's duties creates results that inevitably differ in degree. An appellate court, however, cannot quarrel with varying results among independently minded trial judges that merely reflect differences in their individual judgments. We gauge only whether a trial court abuses its proper discretion.

*Id.* at 1079 (citations omitted).

Under that highly deferential standard, the *Daly* Court evaluated each of the awards decisions made by the district court, affirming in part and reversing in part. First, the Court addressed, and rejected, the appellants' contention that the district court erred in disallowing the many hours spent by the attorney conferring with the plaintiff, participating in depositions, and preparing the motion for fees. 790 F.2d at 1079. In particular, the Court held that a prevailing party has a duty to exercise "billing judgment" to exclude from a fee request hours that are excessive, redundant or unnecessary. *Id.* Under that analysis, the Court found that: (1) the time spent on conferences with clients, although important, was not compensable because the prevailing attorneys in no way carried their burden of proving entitlement to the fees, and failed to illuminate the way in which those hours aided their preparation of the case; (2) the district court's decision to exclude some of the hours spent in depositions as duplicative must be upheld because the district court was in the best position to evaluate whether the efforts of the two attorneys were duplicative; and (3) the district court's finding that the hours spent in preparing the petition for fees was excessive must be upheld because again, the district court was in the best position to determine that the hours spent were "totally unreasonable." *Id.* at 1079–80.

Second, we affirmed the district court's decision to set the proper hourly rate lower than the rate requested by the prevailing party. 790 F.2d at 1080. In particular, the Court found that the district court had appropriately applied the *Johnson* factors, and that the district court had properly found that the rates should reflect the market rates at the time the services were rendered. *Id.* at 1080–81. However, the Court did note that the district court erred in not taking into account the effect of inflation, and suggested that on remand, those market rates be adjusted to account for the delay in payment. *Id.* at 1081.

Third, in evaluating whether the district court erred in refusing upwardly to adjust the reasonable lodestar rate for the excellent results achieved by the litigation, the Court definitively stated that a prevailing attorney is *not* entitled to an upward adjustment of

the lodestar fee simply because he did a good job. 790 F.2d at 1082. Indeed, the Court held that successfully to show entitlement to an upward adjustment, the attorney must demonstrate that the adjustment is needed to accomplish "full and fair compensation"; the Court found, however, that where the *Johnson* factors are properly considered in the process of calculating the lodestar fee, the efforts of the attorneys which led to the excellent results—such as time, effort, and skill—will already have been considered. *Id.* Thus, then to increase the lodestar fee for the excellence of the results would result in impermissible "double counting." *Id.*

Fourth, the *Daly* Court addressed whether the district court's calculation of the expenses award was proper. In particular, the Court noted that the district court had disallowed expenses for investigative charges, telephone bills, copying, postage, and attorney travel, and had instead assumed that if the attorneys are adequately compensated, those expenses would be absorbed in the overhead. 790 F.2d at 1082. In remanding that calculation, the *Daly* Court specifically held that § 1988 contemplates reimbursement not only for attorney's fees but also litigation expenses such as secretarial costs, copying, telephone costs and necessary travel. *Id.* at 1083. Finding that the prevailing party is thus entitled to compensation for reasonable litigation expenses, the Court held that the district court had erred *as a matter of law* in finding the expense request impermissible. *Id.* at 1084.

Finally, the Court also held that the district court did not err in refusing to grant additional compensation under the contingency fee agreement with the plaintiff because to allow such recovery would create a windfall to the attorneys, a result contrary to the purposes of section 1988. 790 F.2d at 1085. In thus remanding the case on the issue of expenses, we held:

> In recognition of the limited role of appellate courts in evaluating the reasonableness of fee awards under § 1988, we do not remand this case lightly. Where an attorney's fee appeal simply concerns questions of fact or of the district court's proper exercise of its broad discretion, a remand

will seldom be warranted. In this case, however, the district court committed errors of law which undermine our confidence in what would otherwise constitute a reasonable attorney's fee award.

*Id. See also Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169 (4th Cir.1994).

■ In the case before us, the district court, in calculating the appropriate fee award under § 1988, properly applied the *Johnson* factors and properly exercised its broad discretion to make factual determinations. Accordingly, we do not disturb, on appeal, the $5,260.24 in attorney's fees and costs awarded by the district court to Trimper. Indeed, several considerations compel an affirmance here.

■ First, Trimper incorrectly assigns error to the fact that the district court reduced the number of compensable hours expended on the merits phase of the case *and* reduced the hourly rate, a decision which Trimper argues imposed a "double reduction" on her. That argument is unsupported by the law, however, and is unavailing here. Indeed, the factors which the district court used to reduce both the hours expended and the hourly rate in calculating the lodestar fee, are expressly contemplated and endorsed by *Johnson.* As described below, the analysis undertaken by the district court is precisely what it was *expected* to do under the law.

This Court held in *Rum Creek Coal, supra,* that the starting point for determining a proper attorney's fee award is to multiply the number of hours reasonably expended by a reasonable hourly rate, 31 F.3d at 174; the district court in the instant case did just that. First, the district court, applying the *Johnson* factors, properly set the hourly rate at $100 rather than the $215 suggested by Trimper. In particular, the court, in determining the customary rate charged for the type of work done by Graber, looked specifically to facts put forth in affidavits which suggested that the rate generally charged in Norfolk for work in civil rights cases was $75 to $95. Thus, the district court properly awarded an hourly rate comparable to rates in similar cases, rather than relying on Graber's bare assertion that he should be award-

ed a rate of $215 because that is his usual rate. Indeed, to have done otherwise would have been to go against the great weight of the law which holds that the proper measure of fees is the prevailing market rate in *the relevant market*, and not the rate charged by the actual attorney in question. *See Daly*, 790 F.2d at 1080–81; *cf. Rum Creek Coal*, 31 F.3d at 175 (finding that evidence of the rate actually charged by the petitioning attorney can be relevant only where the rate has been charged in the past to the same client). Thus, the district court properly rejected $215 as the hourly rate in the instant case. Additionally, the district court properly calculated the reasonable number of hours expended by the attorneys, by adhering to the principle that duplicative, excessive, or redundant hours should not be compensated under § 1988. Because the district court, rather than an appellate court, is in the best position to make that determination, that calculation is entitled to great deference. *See Plyler v. Evatt*, 902 F.2d 273, 278 (4th Cir.1990) ("because a district court has 'close and intimate knowledge of the efforts expended and the value of the services rendered, [the fee award] must not be overturned unless it is clearly wrong' ").

Accordingly, Trimper's argument that the district court's calculation somehow led to a "double reduction" simply is unsupported by the district court's actual analysis. Indeed, the *Johnson* factors expressly contemplate the calculation of the hours expended and the hourly rate in precisely the manner in which the district court did that calculation. The district court reduced the hourly rate by looking at the following factors: (1) the market rate, *as evidenced in affidavits*, (2) the low level of skill required properly to perform the simple legal services rendered, (3) the zero opportunity cost to Graber by taking the case, (4) the limited amount of legal work required prior to settlement of the lawsuit, (5) the brief period of Graber's employment during the merits phase of the case, and (6) the insubstantial amount in controversy, namely a $100 judgment. Likewise, in calculating the hours reasonably expended by Graber for which he could be compensated, the district court considered: (1) that more time was spent on the fees phase of the case than on the merits phase; (2) that three attorneys were not needed; (3) that time spent doing work such as copying and faxing was not properly compensable; (4) that time spent doing excessive and unnecessary work, such as writing lengthy and unnecessary memoranda, should be disallowed; (5) that time spent on unnecessary client consults should be disallowed; and (6) that Graber attempted to maximize rather than minimize the hours spent on his work. As noted in *Daly* and *Rum Creek Coal, supra*, these factors are precisely the considerations that are central to the *Johnson* analysis, and the district court here properly applied those factors within its sound discretion. Trimper therefore has no basis in the law for her assertion that the consideration of these factors resulted in a "double reduction." *Johnson* expressly contemplates that these factors be used *both* in calculating the hourly rate and the reasonable number of hours expended on a case.

 Second, the district court did not err in excluding from its calculation the fees incurred by the two attorneys who helped Graber on Trimper's section 1983 lawsuit; thus, Trimper's argument that the district court erred in that regard is unavailing. In *Daly, supra*, this Court specifically affirmed the district court's decision to disallow certain hours spent in depositions on which two attorneys were working, finding that the district court was in the best position to discern whether the efforts of the two attorneys were duplicative. 790 F.2d at 1080. Moreover, the law is clear that in seeking attorney's fees under section 1988, attorneys are under a duty to minimize expenses. Here, the district court's decision to exclude fees incurred by co-counsel was wholly appropriate because the court found that the use of the two additional lawyers ran contrary to their duty to minimize expenses, and specifically found that the request for three attorneys was excessive because section 1988 does not authorize an award of fees for more than one qualified attorney where the issues are simple. Properly reducing allowable hours because of overstaffing of attorneys is not an abuse of discretion, and indeed falls soundly

within the district court's proper discretion in determining an attorney's fee award.

■ Third, Trimper incorrectly assigns error to the district court's calculation of the fees incurred in litigating the fees phase of the lawsuit, in particular, alleging that the district court erred in limiting those fees to 20 percent of the amount of fees awarded on the merits phase of the lawsuit. Although it is well settled that the time spent defending entitlement to attorney's fees is properly compensable under § 1988, *Daly*, 790 F.2d at 1080, it is nevertheless within the district court's discretion to determine exactly what amount would compensate the party sufficiently for the time spent on the fees phase of a lawsuit. *Id.* (affirming the district court's disallowance of time spent on the fees phase of the lawsuit in light of the district court's finding that the hours requested were "totally unreasonable" because there was no dispute as to entitlement to fees, and because the attorneys were familiar with the case). In the instant case, the district court imposed a 20 percent across-the-board reduction for the fees phase of the lawsuit because Trimper's counsel devoted an inordinate amount of time and expense in seeking attorney's fees and failed to make a reasonable settlement offer; thus, the district court found that costs incurred in the fees phase of the case should not be awarded in an amount which exceeded 20 percent of the costs incurred in the merits portion of the lawsuit. That result is supported by *E.E.O.C. v. Service News Co.*, 898 F.2d 958 (4th Cir.1990), in which we found that the expenditure of over twenty percent of the claimed time on fee preparation was unreasonable in a case in which the time and labor were minimal, where the legal questions were not difficult, and where the case was not complex. 898

F.2d at 965–66. In the instant case, Trimper likewise asked for an inordinate amount for the fees phase of the lawsuit—$11,176—and Graber's time sheets showed hours spent on the attorney's fees stage which were more than *double* the time spent on the merits phase. Thus, we find that the district court did not err in reducing the amount of recoverable fees for the fees phase of the lawsuit to 20 percent of the amount recovered for the merits phase of the lawsuit.

■ Last, the district court did not err in disallowing certain litigation expenses which were undocumented. Trimper, on appeal, contends that the district court erred in disallowing these expenses, claiming that they were indeed fully documented. Graber's only record of these expenses, however, was an unverified "Chart of Expenses," with no receipts or bills attached. Because the law is clear that no litigation costs should be awarded in the absence of adequate documentation, the district court acted well within its discretion in disallowing those costs which were insufficiently documented. That decision is exactly the type of factual determination which should not be disturbed on appeal.

For the foregoing reasons, we affirm the district court's award of $5,260.24 for fees and costs to Trimper. We have definitively held in the past that, because district courts are in the best position to evaluate the need for costs and fees, and because the awarding of such fees are fundamentally factual inquiries, the award should not be disturbed on appeal unless the district court made an error *of law*. In the case before us, the district court properly applied the *Johnson* factors to reach the award, and acted well within its discretion. Moreover, as discussed above, the four assignments of error which Trimper raises on appeal have no merit.*

---

* Trimper also argues in her Brief that because of the Rule 68 Offer of Judgment for $100 which she obtained from the City on her section 1983 lawsuit, she vindicated her First Amendment rights, and thus deserves a fully compensatory attorney's fee. For that reason, she contends, this Court need not consider whether the *repeal of Chapter 3* of the Norfolk City Code provides additional justification for such a fee award. Nevertheless, Trimper argues that *if* this Court should conclude that the Rule 68 judgment provided her with only "limited success" on the

merits of her section 1983 claim and thus that she is not a "prevailing party," the Court *should* consider the repeal of Chapter 3 in determining the "overall results obtained" for purposes of determining whether she is nevertheless a "prevailing party." In so arguing, she asks the Court to reconsider its well-established position that simply being a "catalyst" to a beneficial governmental action does not entitle one to "prevailing party" status under § 1988.

The argument raised by Trimper was made in *anticipation* that the City would argue that she

Accordingly, the judgment is

*AFFIRMED.*

does not deserve a compensatory attorney's fee award at all because Rule 68 Offers of Judgment do not afford her "prevailing party" status. Because the City, however, did *not* raise such an argument through a cross-appeal, Trimper's contention is wholly irrelevant. Indeed, the City proceeds, in this appeal, on the assumption that Trimper *is* a prevailing party, and argues only that the district court's award amount be affirmed. Thus, we are not presented with any occasion here to reconsider our well-established law concerning "prevailing party" status under the "catalyst theory."