## CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

Cruz Hernandez

v.

Trawler Miss Vertie Mae, Inc., et al.

November 26, 1996

Case No. 22311

BY JUDGE VERBENA M. ASKEW

On August 15, 1996, the Court granted the Defendants' Motion for Sanctions against Jesse Suit, Hernandez' attorney. For the reasons stated below, the Court assesses attorney's fees and costs against Mr. Suit in the amount of $20,132.82.

### Background

Hernandez filed a Motion for Judgment on November 22, 1995, suing the various defendants for intentional infliction of emotional distress and maintenance and cure. John Holloway represented all the defendants at all times during this litigation. At a March 19, 1996, hearing on the Defendants' First Demurrer and Motion for Sanctions, the Court questioned whether the allegations in the Motion for Judgment were sufficient. The Court sustained the Demurrer and allowed Suit leave to amend his pleadings. Soon after Suit amended his pleadings, the defendants renewed their Demurrer and Motion for Sanctions. The Court sustained the Demurrer and granted the Motion for Sanctions, finding that Suit violated Va. Code § 8.01-271.1. The Court requested that both parties submit briefs and affidavits regarding the amount of the sanction award.

The defendants ask the Court to award $31,607.82 in attorney's fees and costs. Suit does not contest the imposition of sanctions in this case but argues that the requested amount is excessive. Suit's Memorandum at 2.

## Discussion

Va. Code § 8.01-271.1 provides that a sanction award may include reasonable attorney's fees and expenses. Neither the Court nor the parties have been able to find authority addressing the reasonableness of attorney's fees under § 8.01-271.1.[1] Section 8.01-271.1 is the Virginia counterpart of Rule 11 of the Federal Rules of Civil Procedure, so the Court looks to relevant federal law.[2]

A court should impose the least severe sanction adequate to serve the purposes of Rule 11. *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987). Rule 11 should not be used to shift fees, as the primary purpose of the rule is to deter future litigation abuse. *In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990) (upholding Rule 11 sanctions but vacating monetary award). Automatic fee shifting is contrary to the "American Rule," which requires each party to bear their own attorney's fees absent express authority to the contrary. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *see also Miltier v. Downes*, 935 F.2d 660, 665 (4th Cir. 1991) (stating that reasonable attorney's fees in Rule 11 context are not necessarily actual expenses and attorney's fees).

There are four factors for a court to consider in crafting a Rule 11 sanction award: (1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) elements relating to the severity of the Rule 11 violation. *Kunstler* at 523.

## A. The Reasonable Fee (the Lodestar)

There is a strong presumption that the lodestar, the product of reasonable hours times a reasonable rate, is the reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). The lodestar

---

[1] There is Virginia law for an analogous situation where a contract provides for attorney's fees but does not fix them. When determining such an award, a court should consider circumstances such as time consumed, effort expended, and nature of the services rendered. *Mullins v. Richland National Bank*, 241 Va. 447, 449 (1991).

[2] Besides Rule 11 cases, the issue of reasonable attorney's fees also arises under 42 U.S.C. § 1988, which allows the prevailing party in a 42 U.S.C. § 1983 action to recoup expenses and costs.

model is the best model for attorney's fees, even though it usually results in larger awards because attorneys have an incentive to run up their hours. *See City of Burlington v. Dague*, 505 U.S. 557, 120 L. Ed. 2d 449, 459 (1992) (reversing enhancement of lodestar). The lodestar is presumed to be fully compensatory without producing a windfall. *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986). The burden is on the fee applicant to show that adjustment of the lodestar is necessary to determine the reasonable fee. *City of Burlington* at 456 (quoting *Blum v. Stenson*, 465 U.S. 886, 898 (1984)). Courts should only grant enhancement of the lodestar in rare and exceptional cases. *Delaware Valley* at 565.

To determine the reasonable number of hours, one uses the factors for guiding a court's discretion in calculating a fee award outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (42 U.S.C. § 1988 case); *Daly* at 1077-78 (shifting the timing of the *Johnson* analysis, which used to occur after the calculation of the lodestar). The number of hours must be reasonable and represent sound billing judgment. *Rum Creek* at 175. The Fourth Circuit adopted the *Johnson* factors in *Barber v. Kimbrell*, 577 F.2d 216, 226 (4th Cir. 1978), and the United States Supreme Court adopted them in *Hensley v. Eckerhart*, 461 U.S. 424, 434, n. 9 (1983). The twelve *Johnson* factors are:

1. the time and labor required;
2. the novelty and difficulty of the questions;
3. the skill requisite to properly perform the legal service;
4. the preclusion of other employment by the attorney due to the acceptance of the case;
5. the customary fee;
6. whether the fee is fixed or contingent;
7. time limitations imposed by the client or the circumstances;
8. the amount involved and the results obtained;
9. the attorney's experience, reputation, and ability;
10. the "undesirability" of the case;
11. the nature and length of the professional relationship with the client; and
12. awards in similar cases.

The proper measure of the hourly rate is the prevailing market rate in the relevant market where the court sits and not necessarily the rate charged by the attorney. *Trimper v. City of Norfolk*, 58 F.3d 68, 76 (4th Cir. 1995) (42 U.S.C.

§ 1988 case). Evidence of fees paid to attorneys of comparable skill in similar circumstances is relevant. *Rum Creek* at 175. The rate actually charged is relevant when the party shows that it has charged that client the same rate in the past. *Id.* If it is reasonable to retain attorneys from other communities to litigate such actions, one can consider the rates in those communities. *Id.*

A prevailing party is entitled to compensation for reasonable litigation expenses. *See Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986) (42 U.S.C. § 1988). For other expenses, it seems that one must ask whether the costs were necessary for the prosecution of the litigation. *See Rum Creek* at 178 (discussing disallowance of expenses not related to litigation).

Holloway's billing invoices show that from early August, 1995, to late August, 1996, he spent 150 hours working on this case. During that time, Holloway more or less did the following: prepared a Demurrer, prepared a Motion for Sanctions with an accompanying Memorandum, researched the applicable law on emotional distress, prepared for hearings, represented the defendants in court, engaged in limited discovery, and discussed the case with his clients and Suit. According to these numbers, Holloway spent almost four normal business weeks working on this case.

Taking into consideration all of the *Johnston* factors, the Court believes that 150 hours is an unreasonable amount of time for such work. The record indicates that the two sets of Demurrers and Motions that Holloway prepared are essentially the same. The similarity implies that Holloway did not have to do a great deal of additional research or drafting after the first Demurrer and Motion for Sanctions.

The invoices indicate that Holloway spent 63.50 hours working on the case after the hearing on the First Demurrer and Motion for Sanctions. Of course, Holloway had to spend some time between the two sets of pleadings and hearings reviewing documents and consulting with his clients. It would be unfair for the Court to deduct all 63.50 hours from the total time that Holloway expended on this case. The Court thinks, however, that it is necessary to deduct some of this time. The Court therefore believes that 120 is a reasonable number of hours for the purpose of calculating the lodestar.

With regard to the hourly rate, Holloway's fees increased slightly over the course of representing his clients in this case. Through March 19, 1996, Holloway charged $185.00 an hour. From April 9 through May 31, 1996, he charged $200.00 an hour and $205.00 an hour from them on. Holloway billed 83.5 hours at $185.00, 37.5 hours at $200.00, and 29 hours at $205.00; the average rate is approximately $192.60 per hour.

Both parties have submitted affidavits suggesting what the market rate in Newport News is for litigating claims of intentional infliction of emotional

distress and maintenance and cure. Holloway's affidavits note that the fees that defendant Flagship Maritime Adjusters, Inc. (Flagship) paid Holloway in this case are typical for what it pays Holloway and other attorneys at Hunton & Williams for maritime work. Holloway's affidavits also state that Norfolk-based attorneys usually handle Newport News maritime cases and that rates of $185.00 an hour or higher are within the market range. Suit's affidavits contend that hourly fees of $95.00 to $150.00 are normal, depending on the litigation. Based on the affidavits and the Court's own knowledge and experience, the Court considers $160.00 per hour to be a reasonable rate.

Multiplying 120 as the reasonable number of hours by $160.00 as the reasonable hourly rate, the lodestar is $19,200.00. The Court will add the various Hunton & Williams costs of $932.82, as Holloway has demonstrated that the various costs, e.g., court reporters and a paralegal, were necessary to prosecute this litigation. The Court, however, will exclude the $1,121.95 in costs that defendant Flagship incurred through its agent, Husbands. There is no indication that Husbands was anything more than a corporate representative whose attendance in court was not mandatory. As his presence was not necessary to this litigation, the Court will not include this amount.

## B. *Minimum To Deter*

The primary objective under Va. Code § 8.01-271.1 is to deter lawyers from abusing the court process in the future. This § 8.01-271.1 sanction is Suit's first offense. Suit states in an affidavit that no court has sanctioned him before and that neither the Virginia nor the Louisiana bar has ever instituted a disciplinary action against him.

At best, the facts of this case suggest that the Court should reduce the lodestar amount, and, at worst, the Court should leave the lodestar amount where it is. The Court sees no reason to reduce the lodestar simply because Suit has not been disciplined before. The Court also sees no reason to penalize Suit any further based on this factor; obviously there would be a different situation if this was Suit's second or third such offense. The Court therefore will not use this factor to adjust the lodestar in any respect.

## C. *Ability to Pay*

Suit states that imposition of a sanction here will not drive him from the practice of law but that any amount near the requested $31,607.82 sanction exceeds his ability to pay. Suit further notes in an affidavit that if the Court

imposes an award for the amount that the defendants request, he will have to obtain a loan to pay the award.

Through its calculation of the lodestar, the Court has already reduced the size of the sanction award from the amount that the defendants requested. The resulting sanction award should not inflict a severe financial hardship on Suit. This sanction should serve as a reminder that an attorney should think twice before filing a lawsuit without adequate investigation or preparation. Again, the Court sees no reason to reduce or enhance the value of the lodestar.

### D. *Severity of § 8.01-271.1 Violation*

Suit, while acknowledging the hazards of this argument, contends that his violation of § 8.01-271.1 is not the worst type of violation. Suit suggests that the most serious § 8.01-271.1 violation is when an attorney files a pleading for an improper purpose. The court stated in the August 15, 1996, hearing that the reason for sanctions was because Suit did not have a good faith factual basis for either of his claims.

The type of § 8.01-271.1 violation does not help Suit's case. Regardless of the type of breach, the defendants still had to spend time and money defending against frivolous claims. If the Court agrees with Suit's contention that filing a pleading for an improper purpose is the worst type of § 8.01-271.1 violation, and Suit engaged in this sort of behavior, then the Court might be justified in increasing the lodestar.

The reverse, however, does not necessarily follow. Just because Suit did not engage in the arguably worst kind of behavior does not mean that a reduction in the lodestar is warranted. The Court does not see any basis for altering the lodestar based on the severity of the § 8.01-271.1 violation here.

### Conclusion

Based on the evidence, the Court can craft an effective sanction that serves the purposes of Va. Code § 8.01-271.1. The lodestar, the baseline for the sanction award, is $19,200.00. There are also $932.82 in necessary court costs. The other three factors concerning the determination of a reasonable sanction award do not influence the lodestar one way or the other. The Court, therefore, directs Mr. Suit to pay the defendants $20,132.82.