**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 03-2172**

CITICORP U.S.A., INCORPORATED,

Plaintiff - Appellant,

versus

CHARLES C. EDWARDS; FIRST EQUITABLE REALTY
III, L.P.,

Defendants - Appellees,

and

TOURE JANTOR, INCORPORATED,

Defendant.

Appeal from the United States District Court for the District of Maryland, at Baltimore.  Catherine C. Blake, District Judge; Paul W. Grimm, Magistrate Judge.  (CA-99-696-PWG)

Argued:  September 30, 2004        Decided:  December 17, 2004

Before WILKINSON, GREGORY, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.  Judge Gregory wrote an opinion concurring in part and dissenting in part.

**ARGUED:** Michael Joshua Lichtenstein, SWIDLER, BERLIN, SHEREFF, FRIEDMAN, L.L.P., Washington, D.C., for Appellant.  Robert Alvin Gordon, TYDINGS & ROSENBERG, Baltimore, Maryland, for Appellees. **ON BRIEF:** Roger Frankel, SWIDLER, BERLIN, SHEREFF, FRIEDMAN,

L.L.P., Washington, D.C., for Appellant.  Toyja E. Kelley,  TYDINGS
& ROSENBERG, Baltimore, Maryland, for Appellees.

———————————

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Citicorp U.S.A., Incorporated appeals from the magistrate judge's partial denial of its post-trial motion for attorneys' fees and expenses.  We affirm.


I


We review a district court's decision awarding or denying attorneys' fees and expenses for abuse of discretion.  American Reliable Ins. Co. v. Stillwell, 336 F.3d 311, 320 (4th Cir. 2003).  "Reversal for abuse of discretion is reserved for those instances in which the court is clearly wrong; an award within the discretion of the court should be affirmed even though we might have exercised that discretion quite differently."  Brodziak v. Runyon, 145 F.3d 194, 196 (4th Cir. 1998) (internal quotation marks omitted).[1]

The parties agree that New York substantive law governs this appeal.  Under New York law, when a contractual fee-shifting arrangement provides for payment by one party of another party's attorneys' fees and expenses, courts should order payment so long as the amount claimed is not unreasonable.  F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2nd Cir. 1987).  However, "[t]o compute a reasonable amount of attorneys' fees in a

---

[1]Generally, we will find that a district court has abused its discretion if its conclusion "is guided by erroneous legal principles" or "rests upon a clearly erroneous factual finding." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999).

particular case requires more than simply a report of the number of hours spent and the hourly rate." McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1315 (2nd Cir. 1993). Rather, courts must consider a variety of factors in determining the reasonableness of an attorneys' fee request, including the difficulty of the legal issues involved; the skill required to handle the issues; the time and labor required; the experience, ability, and reputation of the attorney; the customary fee charged by attorneys for similar services; the burdensomeness of the fees; the fairness to the parties; and the amount involved. See McGuire, 1 F.3d at 1315; F.H. Krear, 810 F.2d at 1263.

II

The litigation underlying this appeal arises from a series of commercial lending transactions between the parties that began in 1996. It culminated in 2003 with a bench trial before a magistrate judge, who entered judgment for Citicorp on its claim against Appellees for default interest in the amount of $469,735. Because the parties' loan documents entitle Citicorp to seek its reasonable attorneys' fees and expenses associated with a default or collection of its loans to Appellees, Citicorp also sought judgment for fees and expenses it incurred during its business relationship with Appellees. These fees and expenses were generated by seven law firms which represented Citicorp both before and during this

4

litigation, and they are documented in "several thousand pages of invoices." Brief of Appellant, at 15. The parties agreed before trial that the magistrate judge would resolve Citicorp's request for fees and expenses by way of motion after the bench trial.

Initially, the magistrate judge denied Citicorp's request without prejudice "for lack of particularity." J.A. 3017. The magistrate judge noted that although Citicorp's right under the parties' agreements to recover some fees and expenses related to any default or collection of the loans is undisputed, from the materials presented he was "unable to make a principled decision regarding reasonableness, or even to apply the factors in an informed manner." J.A. 3017. The magistrate judge specifically observed that although Appellees had "raised significant issues regarding the number of law firms that provided services to Citicorp, the reasonableness of the work performed, the number of attorneys staffing the case, the possibility of duplication of effort between attorneys and firms, and the reasonableness of the rates charged," Citicorp had responded "in a conclusory way, without support of any affidavits or other information" that would allow him to properly resolve the dispute. J.A. 3017. The magistrate judge also noted that "the format of the fee invoices presented, amounting to a mere chronological recitation of services provided, makes meaningful analysis nearly impossible, and any attempt to make sense out of the invoices would consume an

5

inappropriately large amount of court time." J.A. 3017.

To resolve the matter on the merits, the magistrate judge directed Citicorp to "provide a restatement of each of the bills in the format identified in Appendix B to the [district court's] local rules." J.A. 3017. The magistrate judge recognized that Appendix B -- which applies to fee requests in civil rights and discrimination cases -- was "technically inapplicable to this contract dispute," but he believed that the requirements of Appendix B regarding the organization of fee invoices into specified categories would insure "the presentation of the information in a manner that facilitates efficient review and analysis by the court." J.A. 3017 n.1. The magistrate judge further instructed Citicorp:

> Any explanation of underlying facts needed to address the evaluative factors set forth in the New York case law will be in the form of affidavits prepared by persons with personal knowledge and under penalty of perjury. As it is Citicorp's burden of proof to establish reasonableness, any memorandum filed needs to discuss each of the factors and clearly explain Citicorp's position with respect to each.

J.A. 3017-18.

In response to the magistrate judge's order, Citicorp submitted a revised motion for attorneys' fees and expenses, to which Appellees objected. The magistrate judge ruled on Citicorp's revised motion in a twenty-nine page order.

The magistrate judge began by noting that of the $786,573.94 in fees and expenses requested by Citicorp, approximately 55%

pertains to Citicorp's actions related to Appellees' alleged loan defaults prior to filing the underlying lawsuit, such as renegotiating the loan documents between the parties and monitoring the collateral used to secure the loans. After recognizing the factors pertinent to calculation of a reasonable fee award, the magistrate judge stated:

> Having reviewed the parties [sic] contracts, and keeping in mind that Citicorp bears the burden of demonstrating its entitlement to reasonable fees, see Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), I conclude that Citicorp has not persuasively demonstrated that it would be reasonable to award it all fees generated as a result of [Appellees'] alleged defaults that date back to 1997. Under the facts of this case, it is reasonable to award attorneys' fees related to reasonable efforts to enforce the agreements by filing suit and prosecuting it. To also award substantial fees for multiple amendments to the contract documents that [Citicorp] successfully re-negotiated would be excessive, in the absence of evidence that the earlier negotiations were undertaken by [Appellees] in bad faith, facts that are not patent here.

J.A. 3111-12. The magistrate judge further observed that "many of the fees sought by Citicorp prelitigation have not convincingly been related to proven defaults by [Appellees]." J.A. 3112.

The magistrate judge next turned to consideration of Citicorp's evidentiary presentation and concluded that Citicorp failed to comply with his prior order that the fee request be resubmitted under the Appendix B format. The magistrate judge noted that Citicorp had instead "submitted, as it had done previously, a mass of invoices from the various law firms it engaged accompanied by a general description as to the work done

7

with a total amount of fees and expenses generated." J.A. 3114.

The magistrate judge continued:

> Citicorp is relying on . . . a mass of unorganized invoices, billing records, and letters, presumably consisting of all information regarding the attorneys' fees and expenses in this case. The revised request now also lists each law firm, the dates that it was involved in [Appellees'] loan arrangements, and the type of work done. Each law firm's entry also lists the total amount of fees generated, hours worked, and expenses billed, which is further broken down into fees and expenses. There are no affidavits from the attorneys of the law firms attesting to the work performed and the hourly rates of the lawyers and paralegals involved in such work. In addition, Citicorp does not provide any worksheet breaking down each law firm by the amount billed, the work done, by whom, and at what hourly rate. Instead, Citicorp has offered the affidavits of [two Citicorp employees], who each attest to the law firms' roles in connection with [Appellees'] loans.

J.A. 3114-15. In light of the foregoing, the magistrate judge

ruled:

> It is not the Court's burden to sift through literally hundreds of pages of invoices relating to legal work performed over a six-year period in an effort to determine whether the fees sought are reasonable and not excessive. If a reviewing court is to conduct a review that is to be meaningful, the party seeking the fee award must do its part to facilitate this review. Where, as here, this was not done, even though specifically requested by the Court, it is appropriate to take this failure into consideration in determining a reasonable fee. Given the sheer volume of the invoices and the lack of specific details offered by Citicorp, I conclude that any fee award must be reduced by thirty-five percent to reflect the fact that a full accounting of each and every fee generated is impossible in this case.

J.A. 3115-16.

The magistrate judge then specifically considered and addressed Citicorp's request as it pertains to each of the seven

8

law firms.[2]  With respect to four of these firms, the magistrate judge denied Citicorp's requests in their entirety for a variety of reasons, including the fact that many of the fees and expenses involve prelitigation services; that Citicorp failed to establish a connection between some of the fees and expenses and a default by Appellees; that many of the fees and expenses appear to document services that are duplicative of work done by other firms; and that the legitimacy of some of the fees and expenses is questionable.

As for the other three firms, the magistrate judge found that Citicorp is entitled to an award for fees and expenses.  However, the magistrate judge reduced the request for each of these firms by 20%.  The magistrate judge made this reduction for the firms of Bilzin Sumberg Dunn Basena Price & Axelrod, LLP; and Howrey & Simon, because of "apparent duplicativeness of . . . effort with other law firms, the breadth of the fees sought, and the lack of detail."  J.A. 3121, 3126.[3]  The magistrate judge made this reduction for the firm of Swidler Berlin Shereff Friedman, LLP, because Citicorp's request lacks "specificity as to the number of attorneys, the type of work done, the billing rate, and the hours

---

[2]The magistrate judge noted that Citicorp failed to provide a breakdown of the lawyers for each firm who worked on the particular tasks involved and their hourly rates.

[3]The magistrate judge also denied part of the request for the Howrey firm based on his finding that it represents prelitigation work and, in any event, the prelitigation work done by this firm appears to overlap with work that was done by other firms.

9

worked, all of which is important information to enable a court to conduct a meaningful review for reasonableness." J.A. 3129.[4]

After making these determinations, the magistrate judge concluded that Citicorp was entitled to recover $412,660.02 for work done by three of the seven law firms. However, the magistrate judge then reduced this award by 35% based on his prior ruling concerning Citicorp's failure to comply with his initial order. The final award to Citicorp is $268,229.02.

### III

Citicorp argues on appeal that the magistrate judge acted arbitrarily in reducing its request for fees and expenses. Citicorp points specifically to the magistrate judge's decision to deny prelitigation fees and expenses and to his decision to reduce the award by 35% (and then make additional reductions) "without even considering the reasonableness of the fees and expenses." Brief of Appellant, at 8.

Having had the benefit of the parties' briefs and oral argument, and after careful consideration of the applicable law, we are not persuaded that the magistrate judge abused his discretion in making the fee and expenses award. The record shows that under

---

[4]The magistrate judge denied Citicorp's request for $22,277.50 in additional expenses based on his determination that "[n]o detailed explanation was provided as to why these services were performed." (J.A. 3130).

10

the circumstances the magistrate judge conducted a thorough review of Citicorp's motion, and we do not find that his factual rulings are clearly erroneous or that his legal rulings are incorrect. See generally Trimper v. City of Norfolk, Va., 58 F.3d 68, 77 (4th Cir. 1995) (holding that "the district court acted well within its discretion in disallowing those costs which were insufficiently documented" and noting that the ruling "is exactly the type of factual determination which should not be disturbed on appeal"); Fair Housing Council of Greater Washington v. Landow, 999 F.2d 92, 98 (4th Cir. 1993) (rejecting the argument that "the district court has the burden to identify which hours in a fee applicant's time sheets are recoverable"); In re Conklin, 946 F.2d 306, 316 (4th Cir. 1991) (affirming district court's reduction of fee and expense request to account for "duplicative and repetitive work" and for "incomplete, inaccurate and irregular records"); Daly v. Hill, 790 F.2d 1071, 1079-80 (4th Cir. 1986) (finding no abuse of discretion in substantial reductions in fee requests based on lack of detailed affidavits supporting request and duplicativeness); Jane L. v. Bangerter, 61 F.3d 1505, 1510 (10th Cir. 1995) (holding that 35% reduction based on inadequate fee request was within district court's discretion).[5]

---

[5]Concerning the denial of prelitigation fees, we note that the magistrate judge -- sitting as the factfinder -- concluded based on the record presented to him that Citicorp failed to "persuasively demonstrate" its entitlement to prelitigation fees or that an award of such fees would be reasonable under the circumstances of this

We therefore affirm the judgment of the district court.

<u>AFFIRMED</u>

---

case.  <u>See</u> J.A. 3108, 3111-13.  In light of the record presented below, we are not prepared to say that these determinations constitute an abuse of discretion.

GREGORY, Circuit Judge, concurring in part and dissenting in part:

I concur with the majority's decision to affirm the district court's award of litigation attorney's fees. I disagree, however, with the majority's decision to affirm the district court's ruling summarily denying pre-litigation attorney's fees in this case. Accordingly, I must respectfully dissent in part.

Appellant argues that the district court erred in denying all pre-litigation attorney's fees. Citicorp seeks fees and expenses in the amount of $786,573.94. Approximately 55% of the fees sought pertain to actions taken by Citicorp prior to filing suit in this case, such as renegotiating loan documents between Citicorp and Dr. Edwards. The remainder of fees and expenses claimed by Appellant relate to litigating this action from March 10, 1999 when the suit was filed, until March 12, 2003 the date the district court found in favor of Citicorp.

The parties do not dispute that in various loan documents Dr. Edwards agreed to pay Appellant's reasonable attorneys' fees, whether or not legal proceedings may have been instituted. In addition, the district court "determined that the contracts generally do refer to the ability of Citicorp to collect legal fees in its attempt to enforce its rights under the contract." J.A. at 3107. The district court also found that "under basic principles of contract law, a contractual fee-shifting provision may be enforced according to its terms." J.A. at 3108. However, the

13

district court concludes that while litigation-related fees are clearly recoverable under New York law, other fees related to Citicorp's attempt to renegotiate the loan documents as well as monitoring the collateral used to secure such documents should not automatically be awarded.

I agree with the majority that the district court has the discretion to determine the appropriateness of the fee award pursuant to factors delineated by New York cases under a standard of "reasonableness." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters."). However, the majority does not address the district court's erroneous conclusion that "it is reasonable to award attorneys' fees related to reasonable efforts to enforce the agreements by filing suit and prosecuting it. [However,] [t]o also award substantial fees for multiple amendments to the contract documents that the Bank successfully re-negotiated would be excessive, in the absence of evidence that the earlier negotiations were undertaken by Dr. Edwards in bad faith." J.A. at 3111-12. There is no citation to case law or a contract provision that requires Citicorp to prove or demonstrate Appellee's bad faith in order to seek or be granted attorneys' fees for negotiation of the

14

loan agreements or in connection with the collection or attempted collection of any collateral. Consequently, the district court has no support for its assertion that Appellant must show bad faith on the part of Dr. Edwards in order to collect pre-litigation attorneys' fees. Moreover, the district court's conclusion virtually strips the meaning from the attorney's fee provision in the loan agreements, and the New York case law that supports it. While a determination of reasonableness is always required when a court decides whether or not to grant attorneys' fees, bad faith is not.

In this case, the loan agreements provide in relevant part:

> Borrower agrees to pay to the Lender all fees and costs incurred or to be incurred by the Lender, including all legal expenses, in connection with the negotiation, documentation and closing of the First Amendment and/or any documents and instruments executed in connection with the First Amendment.

J.A. at 840.

> Borrower agrees to pay to the Lender all fees and costs incurred or to be incurred by the Lender relating to the matters described herein, including all reasonable legal expenses . . . in connection with the negotiation . . . of this Second Amendment and/or any of the documents and instruments executed in connection with this Second Amendment.

J.A. at 857.

> Borrower agrees to pay all costs incurred by any holder hereof, including reasonable attorneys' fees (including appellate proceedings), incurred in connection with any Event of Default . . . or in connection with the collection or attempted collection of enforcement hereof, or in connection with the protection of any collateral given as security for the payment hereof, <u>whether or not</u>

15

legal proceedings may have been instituted.

J.A. at 878-79 (emphasis added).

All of these provisions were included in loan agreements that were negotiated by the parties and signed by Dr. Edwards. Presumably these provisions were bargained for by the parties, therefore neither the district court nor this court is at liberty to disregard them. The December 8, 2000 settlement agreement, which the parties executed but failed to implement, contained an admission from Dr. Edwards stating that he was in "default in the payment of certain monetary obligations . . . ." J.A. at 3112. The district court disregarded that admission and concluded that because the only default that was before the court and adjudicated was the December 8, 2000 settlement agreement, the earlier defaults alleged by Citicorp were never "proven defaults" by Dr. Edwards. Consequently, the district court found that Citicorp failed to relate convincingly the pre-litigation fees it sought to "proven defaults" by Dr. Edwards.

Contrary to the district court's finding regarding pre-litigation attorney's fees, the district court acknowledges the February 1, 1999 Default Letter ("Default Letter") which discusses a number of acts of default in connection with the first mortgage and with other documents that were entered into by Dr. Edwards and Citicorp. The district court stated during the March 12, 2003 bench trial:

16

> It is not necessary for me to reach a finding as to each
> and every item of default alleged. I am convinced from
> having heard the testimony that there are at least one or
> more acts of default as identified in Exhibit 11 [the
> Default Letter] that exist to include but not limited to
> at a minimum on page 2 Roman Numeral II-A, that of the
> $122,763 payment, Dr. Edwards acknowledged that there was
> some balance unpaid . . . . And so at a minimum, there
> were some acts of default that existed with respect to
> loan documents and were established by Citicorp in
> connection with Exhibit 11. . . . So therefore, I find as
> a matter of fact and conclude as a matter of law there
> were defaults under the loan documents . . . .

J.A. at 2171.[*]

The Default Letter states that Dr. Edwards had "failed to pay (i) $122,763 of the October 1, 1998 Credit Note installment and (ii) the $1,500,000 January 2, 1999 installment of the Credit Note as and when due." J.A. at 2559. Thus, the district court found that Dr. Edwards had defaulted on at least one loan agreement prior to February 1, 1999, but held that the award of default interest would not commence until February 1999. Based on this alone, this court can not affirm the district court's decision to summarily disallow all pre-litigation fees and expenses that Appellant sought to recover. O&Y (U.S.) Financial Co. v. Chase Family Ltd. Partnership No. 3, Nos. 93 Civ. 1855 to 93 Civ. 1857, 1994 U.S. Dist. LEXIS 13249, at *13-14 (S.D.N.Y. Sept. 20, 1994) ("whether a party seeking enforcement of a promissory note can recover attorneys' fees incurred in settlement negotiations is a matter on

---

[*]Although the district court was discussing the issue of default interest, the district court does acknowledge that defaults had occurred prior to 1999.

17

which this court has not consistently ruled . . . . the better view is that such fees should be recoverable.").

I agree with the district court that Citicorp bears the burden of demonstrating its entitlement to reasonable fees. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). However, I disagree with the standard that the district court applies in denying CitiCorp's request of pre-litigation fees, which the majority seems to accept as correct. In this case, the agreements provide that reasonable attorneys' fees connected to negotiation and to defaults, are to be paid by Dr. Edwards. The district court seems to be under the belief that the pre-litigated attorneys' fees allowed under the loan agreements require that they be directly related to an adjudicated default and/or that there must be evidence that the negotiation they are associated with were undertaken due to bad faith on the part of Dr. Edwards. Neither of these conditions are required in order to grant pre-litigation fees to Citicorp. The loan agreements merely require that the fees be related to negotiations of the First and Second Amended Agreements and/or default on the part of Dr. Edwards. In fact, the Second Amended and Restated Credit Note, executed in July 1998, expressly states that "reasonable attorneys' fees" incurred in the event of

18

any default, would be paid by Dr. Edwards "whether or not legal proceedings may have been instituted." J.A. at 878-79. Although the provisions arguably were meant to encourage the parties to settle any defaults without involving the courts, the plain language of the provisions protects CitiCorp's right to seek attorney's fees incurred in resolving non-adjudicated defaults. There is evidence in the record including testimony of Richard Werner, a Citicorp Vice President, that some of the attorneys' fees included in Appellant's request were related to resolving Dr. Edwards's defaults. <u>Tige Real Estate Development Co. v. Rankin-Smith</u>, 650 N.Y.S.2d 114 (N.Y. App. Div. 1996) (finding that the landlord's entitlement to attorney fees, including fees expended in negotiation, was the law of the case, however the court, found that the attorney's fees were excessive and reduced the award, but did not deny them all together).

Accordingly, I respectfully submit that the district court's denial of pre-litigation fees should be reversed and remanded to the district court to determine what reasonable amount of pre-litigation fees should be awarded.