Freddie MCCOLLUM, Jr., et al.

v.

Robert MCDANIEL, et al.

No. Civ. CCB–98–824.

United States District Court,
D. Maryland.

March 28, 2001.

John Eric Smathers, McGowan & Smathers, Laurel, MD, John C. Harvey, Jr., Law Office, Lanham, MD, for plaintiffs.

Laura J. Gwinn, Prince George's County Office, Upper Marlboro, MD, Shalisha Hines Ivy, County Administration Office, Upper Marlboro, MD, for defendants.

## MEMORANDUM

BLAKE, District Judge.

On April 3, 2000, a jury awarded over $4.1 million in compensatory and punitive damages to plaintiff Freddie McCollum, Jr. for an assault committed against him by Prince George's County police officers in the course of an arrest for alleged traffic violations on June 28, 1997. Various post-trial motions followed, and attempts to settle the case were not successful. Following a brief procedural outline of the litigation, the motions are addressed below.

Suit was filed in this court on March 19, 1998. The case proceeded to trial on the third amended complaint, in which Freddie McCollum, Jr., Martha McCollum, and Retania McCollum asserted claims for federal constitutional violations under 42 U.S.C. § 1983, similar claims for Maryland constitutional violations, and state law claims for assault, battery, false arrest, false imprisonment, malicious prosecution, and loss of consortium. Named as defendants were Prince George's County police officers Robert McDaniel, Michael Hubbard, James Murphy, and James Kline. A separate count asserted respondeat superior liability against Prince George's County for the tortious acts of its employees.[1]

In its verdict, the jury found that Cpl. McDaniel's entry into Mr. McCollum's home violated his federal and state constitutional rights but awarded only nominal damages of $1.00. The jury also found that Cpl. McDaniel, Cpl. Hubbard, and Cpl. Murphy all violated both the federal and Maryland constitutions by using excessive force in the arrest of Mr. McCollum, and that they maliciously battered Mr. McCollum in violation of Maryland law. The jury awarded past medical expenses of $67,670.00, past and future lost earnings of $145,000.00, and non-economic damages of $3,500,000.00. In a supplemental verdict, the jury awarded punitive damages of $150,000 each as to Cpl. McDaniel and Cpl. Hubbard, and $100,000 as to Cpl. Murphy. The jury found in favor of Cpl. McDaniel on both Mr. McCollum's and Retania McCollum's claims for malicious prosecution; Martha McCollum's claim for loss of consortium was dismissed voluntarily before the case proceeded to the jury; and the claim against James Kline was dismissed by the Court.

Judgment was entered on May 31, 2000 against the individual defendants pursuant to Fed.R.Civ.P. 54(b). On June 1, 2000, the plaintiffs requested an amended judgment to include Prince George's County.[2] Now pending are that request, the defendants' motion for a new trial or remittitur, the plaintiffs' motion for attorneys' fees, and related matters.

### Motion to Amend Judgment

█ The motion shall be **Granted,** and an Amended Judgment shall be entered under Fed.R.Civ.P. 54(b), as the judgment

---

1. Other counts against Prince George's County were bifurcated for later trial if necessary.

2. That request shall be docketed as a motion to alter or amend judgment under Fed. R.Civ.P. 59(e).

is final and there is no just reason for delay. *See Braswell Shipyards v. Beazer East,* 2 F.3d 1331, 1335–36 (4th Cir.1993). The amended judgment will hold Prince George's County liable on a theory of respondeat superior for the full amount of compensatory damages awarded as a result of its officers' constitutional torts. *DiPino v. Davis,* 354 Md. 18, 729 A.2d 354, 372 (1999). In the absence of clear supporting authority, however, I will not conclude that the County is liable for punitive damages.

### Motion to Set Scheduling Order and Pre–Trial for Bifurcated Counts

This motion will be **Denied.** In light of the jury's verdict, the pending motions, and the possibility of an appeal to the Fourth Circuit, the plaintiff has shown no reason to proceed to trial against the County on the bifurcated counts at this time.

### Motion for New Trial or, in the Alternative, for Remittitur

A motion for new trial under Fed.R.Civ.P. 59(a) should be granted if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Cline v. Wal–Mart Stores, Inc.,* 144 F.3d 294, 301 (4th Cir.1998) (quoting *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.,* 99 F.3d 587, 594 (4th Cir.1996)). The court may weigh the evidence and consider the credibility of witnesses; its decision is reviewed for abuse of discretion. *See id.* If the motion rests on alleged excessiveness of the jury's verdict, federal standards apply to the federal claims, but state law standards must be applied to the verdict on the state law claims. *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 426–31, 116 S.Ct. 2211, 2219–21, 135

L.Ed.2d 659 (1996); *Konkel v. Bob Evans Farms, Inc.,* 165 F.3d 275, 280–81 (4th Cir.1999). For the reasons discussed below, the defendants' alternative request for a new trial *nisi remittitur* will be granted.

### 1. Prejudice from Plaintiff's Counsel Signing Answers to Interrogatories

Mr. Smathers' conduct in (1) signing his client's name to the answers to interrogatories and (2) failing to advise defense counsel that he had done so appears to be a violation of his professional responsibilities. Whether a sanction may be warranted by bar counsel or this court is separate, however, from the court's decision about whether a new trial is justified. Mr. Smathers apparently acted with the consent of his client. (Trial Tr. 3/29/00 at 124–26.) After consultation, the court instructed the jury that the interrogatory answers had been signed with Mr. McCollum's consent and were binding on him "the same as if he had signed them personally." (*Id.* at 170–71.) Thus, the impeachment value of the cross-examination was not seriously undermined. Nor, in any event, was the plaintiff's credibility on these issues nearly as significant as defense counsel suggests. The clear weight of the physical and other evidence, completely apart from Mr. McCollum's testimony, demonstrated that the defendants' version of the way in which the plaintiff received his injuries simply was not believable. Mr. Smathers' unfortunate lapse of professional conduct did not significantly prejudice the defendants and does not justify a new trial.

### 2. Admission of Medical Records

Prior to trial, the defendants filed a motion in limine regarding portions of the medical records that referred to the plaintiff having been assaulted. As stated in the court's ruling on that motion, "Mr.

McCollum's statements to medical personnel that the injuries resulted from an assault are admissible as part of the medical records under Fed.R.Ev. 803(4). Any implication that medical personnel may have reached an opinion as to the cause of the injuries can be dealt with by an appropriate instruction." (Order issued March 24, 2000.) The defendants failed to request any instruction at trial and have not identified in the present motion any specific portion of the medical records that contains a conclusion by medical personnel, as opposed to an allegation by Mr. McCollum, that he was assaulted. Even if the admission of any part of the record was erroneous, there was no significant prejudice in light of the overwhelming evidence against the defendants, and no new trial is warranted.

### 3. *Instruction on Respondeat Superior*

■ The County's argument in this regard is no different from that which might be made by any employer who would prefer not to be held accountable for the torts of its employees. Under Maryland law, the County must accept respondeat superior liability for state constitutional violations committed by its officers. *DiPino v. Davis*, 354 Md. 18, 729 A.2d 354, 372 (1999). The plaintiff sued the County and was entitled to have the jury instructed on the theory of law under which the County would be held liable. This is not a question of statutory indemnification such as those involved in the cases cited by defendants.

### 4. *Limiting Defendants' Closing Argument*

■ As the jury was instructed, argument of counsel is not evidence. (Trial Tr. 4/3/00 at 6.) Counsel was permitted to argue, consistent with her clients' testimony,

that Mr. McCollum fell through the rafters and the officers fell on top of him. It is the court's recollection that the specific argument which was restricted was not supported by the evidence.[3] Further, any prejudice from sustaining the plaintiffs' objection, if the ruling was erroneous, is minimal in light of the clear weight of the evidence refuting defendants' version of the events. No new trial is warranted.

### *Remittitur*

■ Compensatory damages are deemed excessive under federal law when they are "against the clear weight of the evidence, or based upon evidence which is false, or will result in a miscarriage of justice." *Cline*, 144 F.3d at 305 (quoting *Johnson v. Parrish*, 827 F.2d 988, 991 (4th Cir.1987) (internal punctuation omitted)). Punitive damages are excessive when the court concludes that the amount of the award would result in a miscarriage of justice. *Id.* at 306. If the court identifies a jury's verdict as excessive, it should grant a new trial *"nisi remittitur,"* which gives the plaintiff the option to accept the reduced amount or proceed to a new trial, which may be on the whole case or on damages alone, at the plaintiff's choice. *Konkel*, 165 F.3d at 280. As to the state law claims, remittitur may be directed if the court determines that the verdict is grossly excessive, shocks the conscience of the court, is inordinate, or is simply excessive. *Owens–Corning v. Walatka*, 125 Md. App. 313, 725 A.2d 579, 590–91 (1999) (quoting *Banegura v. Taylor*, 312 Md. 609, 541 A.2d 969, 976 (1988)).

### 1. *Lost Wages*

■ The calculation of $145,000 was based on evidence concerning a reduction in earning capacity. It was supported by

---

**3.** The defendants have not cited to any specific portion of the closing argument, and the transcript does not appear to be in the court file.

expert testimony and was not so speculative as to warrant setting aside the jury's evaluation of the evidence. No reduction will be ordered.

## 2. *Non–Economic Damages*

■ The court has considered the extent of Mr. McCollum's injuries as well as the cases cited and affidavits provided by counsel for both defendants and plaintiff. Mr. McCollum undoubtedly suffered very serious physical injuries, including the loss of his right eye, as well as pain and mental anguish from the assault. There has been, however, no testimony that Mr. McCollum has suffered any physical trauma, other than the loss of his eye and some impairment to his left hand, that will persist into the future, that he will require psychological counseling, that he is in danger of becoming completely blind, or that physical or mental stress will render him unable to work or cope with his medical condition. *See, e.g., Cline,* 144 F.3d at 305–06. Mr. McCollum does argue that he suffers "fear, pain, and uncertainty of facing future surgeries." (Pl.'s Opp. at 3.) There has been, however, no evidence to prove that such medical attention will be required.

Neither side has presented the court with a case directly parallel to this one. The severity of Mr. McCollum's injuries and the fact that he suffered them at the hands of three police officers entitles him to a larger award than those received by the plaintiffs in the cases cited by the defendants. The lack of ongoing psychological or physical injury other than the loss of his eye and some impairment of his left hand, however, distinguishes the cases cited by plaintiff's counsel in which multi-million-dollar verdicts were upheld. *See, e.g., Owens Corning v. Bauman,* 125 Md. App. 454, 726 A.2d 745, 780 (1999) (finding $15 million award not excessive when plaintiff faced ongoing pain, chemotherapy, surgery, and premature death). In light of those facts, the court finds the award of $3.5 million for non-economic damages to be against the weight of the evidence and excessive under both state and federal standards. The court concludes that, at the outermost, the evidence would support an award of $1.25 million. Accordingly, it will reduce the award for non-economic damages to $1.25 million and grant a new trial *nisi remittitur* at the plaintiff's option. *See Cline,* 144 F.3d at 306.

## 3. *Punitive Damages*

■ Initially, the court agrees that the actions taken and injuries inflicted by the three officers in beating Mr. McCollum and releasing their police dog on him warrant an award of punitive damages. The amounts awarded by the jury, however, are above and beyond that required to punish the defendants and deter similar conduct in the future. Accordingly, the court concludes that those awards constitute a miscarriage of justice. *See Cline,* 144 F.3d at 306–07; *Atlas Food Sys. & Servs.,* 99 F.3d at 595.

In making that decision, the court has considered the defendants' argument that the awards against Cpl. McDaniel and Cpl. Hubbard are 150 times greater, and the award against Cpl. Murphy 100 times greater, than the maximum criminal fine that could be imposed pursuant to 18 U.S.C. § 242. *See BMW of North Am., Inc. v. Gore,* 517 U.S. 559, 583–84, 116 S.Ct. 1589, 1603, 134 L.Ed.2d 809 (1996). In addition to a maximum fine of $1,000, however, 18 U.S.C. § 242 also permits imprisonment. The three officers have not received criminal sentences, and the court concludes that their conduct warrants a fine much greater than $1,000.

The court, however, also has considered the defendants' financial resources. Each officer makes between $50,000–$61,000 annually and all three are married. Cpl. McDaniel and Cpl. Murphy each have two

children. The amounts awarded by the jury are substantially likely to bankrupt the officers.

In its "independent judgment," the court concludes that a two-thirds reduction in the punitive damages awards, while still substantially punishing the three officers, will better balance the harm inflicted, the need to deter similar conduct in the future, and the officers' financial resources. *See Cline*, 144 F.3d at 306–07. Accordingly, the court will reduce the punitive damage awards to $50,000 each as to Cpl. McDaniel and Cpl. Hubbard, and $35,000 as to Cpl. Murphy, and grant a new trial *nisi remittitur* at the plaintiff's option.

### Plaintiff's Motion for Attorney Fees

On June 14, 2000, Mr. McCollum's counsel filed a motion for attorneys' fees, presumably under 42 U.S.C. § 1988. Demonstrating a substantial lack of understanding of the statutory basis for an award of fees against the defendants, Mr. Smathers initially asked for $1,366,666.66,

4. Mr. Smathers' original petition sought an alternative fee of $92,520.00; that request was increased to $104,550.00 in his Amended and Supplemental Motion filed July 11, 2000.

5. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (quoting *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984)); *see also Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir.1994).

6. The lodestar award is "the product of reasonable hours multiplied by a reasonable rate." *Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir.1991) (citing *Delaware Valley Citizens' Council for Clean Air*, 478 U.S. at 565, 106 S.Ct. at 3098). " '[W]hen … the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee' to which counsel is entitled." *Delaware Valley Citizens' Council for Clean Air*, 478 U.S. at 564, 106 S.Ct. at 3098, 92 L.Ed.2d 439 (1986) (quoting

which represents his one-third contingency fee. In the alternative, he requested an hourly rate fee of $104,550.00, plus $32,175.95 in costs.[4]

The standards for determining a reasonable attorney's fee award under 42 U.S.C. § 1988 and related statutes are often quoted. The Supreme Court has held that "the proper first step in determining a reasonable attorney's fee is to multiply 'the number of hours reasonably expended on the litigation times a reasonable hourly rate.' "[5] The resulting product is commonly known as the lodestar award.[6] The Supreme Court has noted that most of the factors articulated by the United States Court of Appeals for the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), are subsumed in the initial calculation of the "lodestar" award. *See Hensley v. Eckerhart*, 461 U.S. at 424, 434 n. 9, 103 S.Ct. 1933, 1940 n. 9, 76 L.Ed.2d 40 (1983). Those factors[7] have been adopted by the

*Blum*, 465 U.S. at 897, 104 S.Ct. at 1548) (emphasis omitted). However, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward…." *Hensley v. Eckerhart*, 461 U.S. at 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983).

7. The *Johnson* factors are:

"(1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required properly to perform the legal service; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the 'undesirability' of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases."

United States Court of Appeals for the Fourth Circuit.[8] Consideration of those factors in arriving at the reasonable rate and reasonable number of hours expended ordinarily will produce a lodestar figure that results in fair compensation without further adjustment.[9]

The defendants have raised numerous specific issues about the plaintiff's petition, including a challenge to the hourly rate, the apparent failure to exercise billing judgment by excluding hours spent on unsuccessful claims or duplicative work, the failure to follow the Local Rules, and the need for additional discovery as to certain entries on the fee petition. Some of these issues may be meritorious.[10] A denial of the petition in its entirety, however, is not warranted.

In light of the court's ruling on the motion for new trial or remittitur, and the possibility of appeal, no final ruling on the petition will be made at this time. While the request for a one-third contingency amount is denied, the remainder of the petition will be denied without prejudice subject to renewal within 30 days of the conclusion of any appeal or the expiration of time for noting an appeal.[11] Similarly, the plaintiff's motion for a protective order will be granted pending renewal of the attorneys' fee petition.

A separate Order follows.

## ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **OR-DERED** that:

1. the plaintiff's Motion To Amend Judgment is **Granted;**

2. the plaintiff's Motion to Set Scheduling Order and Pre–Trial for Bifurcated Counts is **Denied;**

3. the defendants' Motion for a New Trial is **Denied;**

4. the defendants' Motion for New Trial Nisi Remittitur is **Granted** to the extent set forth in the Memorandum;

5. the plaintiff's Motion and Amended Motion for Attorneys' Fees are **Denied without prejudice,** subject to renewal within 30 days of the conclusion of any appeal or the expiration of time for noting an appeal;

6. the plaintiff's Motion for a Protective Order is **Granted** pending renewal of the attorneys' fee petition;

7. copies of this Order and the accompanying Memorandum shall be mailed to counsel of record.

---

*Trimper v. City of Norfolk,* 58 F.3d 68, 73 (4th Cir.1995).

8. *See id.; Spell v. McDaniel,* 824 F.2d 1380, 1402 n. 18 (4th Cir.1987); *Daly v. Hill,* 790 F.2d 1071, 1077 (4th Cir.1986).

9. *See Blum,* 465 U.S. at 898–902, 104 S.Ct. at 1548–50; *Trimper,* 58 F.3d at 73–74; *National Wildlife Fed'n v. Hanson,* 859 F.2d 313, 318–19 (4th Cir.1988) (quoting *Daly,* 790 F.2d at 1078).

10. As to the range of hourly rates, however, the court notes that the risk of nonpayment was taken into account only as it affects the prevailing market rate for plaintiffs' attorneys' fees. Contrary to defense counsel's contention, no "enhancement" in violation of the Supreme Court's opinion in *City Burlington v. Dague,* 505 U.S. 557, 561, 112 S.Ct. 2638, 2640–41, 120 L.Ed.2d 449 (1992) was involved. Further, $200 per hour is not on its face excessive for civil rights work of this kind by experienced litigators.

11. Likewise, the Bill of Costs will be held pending the results of any appeal.