Hugo SOLIS, Plaintiff,

v.

**PRINCE GEORGE'S COUNTY**
**et al., Defendants.**

No. CIV. A. AW–99–2359.

United States District Court,
D. Maryland,
Southern Division.

July 13, 2001.

Matthew Howard Goodman, Hyattsville, MD, for Plaintiff.

Laura J. Gwinn, Prince George's County Attorneys Office, Upper Marlboro, MD, for Defendants.

### *MEMORANDUM OPINION*

WILLIAMS, District Judge.

Plaintiff, Hugo Solis, brings this 42 U.S.C. § 1983 action against Prince George's County, Officer Peter Ruffin, and several John Doe police officers. Plaintiff complains that he was unjustifiably assaulted and battered by the police officers as well as wrongfully arrested and detained. In addition to the § 1983 claims, Plaintiff asserts various constitutional and common law tort claims against the officers and their employer, Prince George's County, under a theory of *respondeat superior*. Currently pending before the Court is Defendants' Motion for Partial Summary Judgment. The motion has been fully briefed. No hearing is deemed necessary. *See* Local Rule 105.6. Upon consideration of the arguments made in support of, and opposition to, the Defendants' motion, the Court makes the following determinations.

### I. *FACTUAL BACKGROUND*

Hugo Solis is a resident of Prince George's County. His sole language is Spanish. Mr. Solis claims that, on July 21, 1998 at approximately 4:30 a.m., he and others were waiting outside his Langley Park apartment complex for a ride to

work. The accounts of what occurred thereafter vary widely.

According to Plaintiff, without provocation or any communication, Officer Ruffin grabbed, pushed, and threw him to the ground. Once on the ground, Officer Ruffin strangled Mr. Solis for several minutes. Suddenly, several Prince George's County police officers arrived on the scene, apparently in response to Ruffin's call. The other officers joined Officer Ruffin in kicking and beating Mr. Solis several times all over his body. The officers inserted a metal object into Plaintiff's mouth. Then, Officer Ruffin handcuffed Plaintiff, placed him under arrest, and transported him to the police station.

Officer Ruffin presents a very different version of the facts. According to Officer Ruffin, while he was on foot patrol, he observed Plaintiff sitting on a fence. As Officer Ruffin approached, Mr. Solis ran. Believing this conduct indicated the possibility of criminal activity, Officer Ruffin chased Plaintiff. Plaintiff ran into a building and pushed the door into Officer Ruffin. As a result, Officer Ruffin was pinned behind the door. After a struggle, Officer Ruffin was able to re-gain control and arrest Plaintiff. Officer Ruffin pulled Plaintiff out of the building and pushed him to ground. Thereafter, Officer Ruffin attempted to advise Plaintiff that he was under arrest, but realized that Plaintiff did not speak English. Officer Ruffin does not speak Spanish.

Once detained at the police station, Plaintiff alleges he was stripped and placed in a cell for approximately 20—30 minutes. At which point, he learned that he was suspected of engaging in drug activity. He was not ultimately charged with any drug offense, but rather a second-degree assault charge.

## II. *DISCUSSION*

### A. *Evidentiary Matters*

■■■ Defendants raise several evidentiary objections to several submissions accompanying Plaintiff's opposition. On a motion for summary judgment, a district court may only consider evidence that would be admissible at trial. *See Rohrbough v. Wyeth Laboratories, Inc.,* 916 F.2d 970, 973 (4th Cir.1990); *Keziah v. W.M. Brown & Son, Inc.,* 888 F.2d 322, 326 (4th Cir.1989). On a motion for summary judgment, a district court may consider deposition testimony or affidavits complying with Rule 56(e) as a substitute for live testimony. *See* Fed.R.Civ.P. 56(c), (56)(e). Thus, "an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court." *Evans v. Technologies Applications & Service Co.,* 80 F.3d 954, 962 (4th Cir.1996). As to an expert opinion, "an affidavit that states facts on which the expert bases an opinion satisfies Fed. R.Civ.P. 56(e) even though the expert does not attach the data supporting the facts." *M & M Medical Supplies v. Pleasant Valley Hosp.,* 981 F.2d 160, 166 (4th Cir.1992).

■■■ In opposing Defendant's Motion for Partial Summary Judgment, the Plaintiff has submitted the unsworn statements of several alleged eyewitnesses to the incident and a Rule 26(a)(2) expert witness disclosure report. "It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." *Orsi v. Kirkwood,* 999 F.2d 86, 92 (4th Cir.1993). Thus, "[u]nsworn statements do not qualify as affidavits and are not considered by the Court when ruling on a motion for summary judgment." *Lugue v. Hercules, Inc.,* 12 F.Supp.2d 1351, 1355 (S.D.Ga.1997). *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, n. 17, 158, 90 S.Ct. 1598, 1609, 26 L.Ed.2d

142 (1970). Likewise, "unsworn expert reports, which may have been prepared in compliance with Rule 26(a)(2), will not be considered by the Court for purposes of summary judgment." *Lugue*, 12 F.Supp.2d at 1358. Retrieving an affidavit in compliance with Rule 56(e) is not an onerous task. Accordingly, the Court will not consider the unsworn eyewitness statements or the unsworn expert report.

■ Defendants also take issue with respect to Plaintiff's use of his own supplemental answers to interrogatories. With respect to discovery requests, Rule 26 imposes a duty to "seasonably ... amend a prior response to an interrogatory ... if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed.R.Civ.P. 26(e)(2) Furthermore, Rule 56(c) expressly provides that answers to interrogatories may be considered on a motion for summary judgment. *See* Fed.R.Civ.P. 56(c). Still, in order to be considered on a motion for summary judgment, a party's interrogatory answers, as with other forms of evidence, must still be admissible under the Federal Rules of Evidence. *See Rohrbough*, 916 F.2d at 973. Furthermore, courts have required answers to interrogatories to satisfy the prerequisites for consideration of affidavits pursuant to Rule 56(e). *See Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 273 n. 1 (2d Cir.1968); *H.B. Zachry Co. v. O'Brien*, 378 F.2d 423 (10th Cir.1967). Therefore, subject to the Federal Rules of Evidence and Rule 56(e), the Court shall consider portions of the Plaintiff's supplemental answers to Defendant's interrogatories in reviewing the motion for summary judgment.

### B. *Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). While the evidence of the nonmovant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transportation, Inc.*, 152 F.3d 326, 330–31 (4th Cir.1998). In responding to a proper motion for summary judgment, the opposing party must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548. In the absence of contradictory evidence showing a genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. 2548. For the purposes of summary judgment, a genuine dispute exists if a reasonable jury could return a

verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### C. *Liability of Individual Officer*

#### 1. *Qualified Immunity under 42 U.S.C. § 1983*

▮▮ Under § 1983, state officials performing discretionary functions are entitled to qualified immunity where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *See Wilson v. Layne,* 141 F.3d 111, 114 (4th Cir.1998), *aff'd,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). "[Q]ualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability' by attaching liability only if '[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right[.]'" *United States v. Lanier,* 520 U.S. 259, 270, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997) (citations omitted). Essentially, qualified immunity protects law enforcement officers from "'bad guesses in gray areas' and ensures that they are liable only 'for transgressing bright lines.'" *Wilson v. Layne,* 141 F.3d at 114. In reviewing an officer's entitlement to qualified immunity, the Court undertakes a three-part analysis. "First, we must identify the right allegedly violated; second, we must decide whether the right was clearly established at the time of the alleged violation; and third, we must determine whether a reasonable person in the officer's position would have known that his or her actions violated that right." *Gould v. Davis,* 165 F.3d 265, 269 (4th Cir.1998). "A police officer should prevail on an assertion of qualified immunity if a reasonable officer possessing the same information could have believed that his conduct was lawful." *Slattery v. Rizzo,* 939 F.2d 213, 216–17 (4th Cir.1991).

##### a. *Fourth Amendment—Excessive Force* [1]

▮ Defendants maintain that alleged inconsistencies in Plaintiff's deposition testimony and his medical records demonstrate the absence of a genuine dispute as to the amount of force employed during the incident. "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard ...." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871 (citations omitted). Furthermore, application of the Fourth Amendment reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872.

---

1. Defendants concede that genuine issues of material fact exist concerning Plaintiff's allegations of lack of probable cause under the Fourth Amendment. (Defs.' Mot. Summ. J. at 10.) Therefore, the Court shall not address this claim.

Whether Plaintiff was suspected of any criminal activity or exhibited any signs of resistance or escape at the time of the incident is the center of a factual dispute between the competing versions of the parties. Where "[t]he determination of what actually happened depends exclusively on an assessment of the credibility of the respective witnesses[,][t]his assessment is a disputed issue of fact and, therefore, cannot be resolved on summary judgment...." *Rainey v. Conerly*, 973 F.2d 321, 324 (4th Cir.1992). According to Plaintiff's account, while he was awaiting a ride in front of his building, Officer Ruffin grabbed him, threw him to the ground, choked him, and, with several other officers, struck him multiple times as he was laying on the ground with his arms spread out. Officer Ruffin made no attempt to communicate with Plaintiff before applying force. There was no indication that Plaintiff was intoxicated or under the influence of drugs. Construing the facts in the light most favorable to the Plaintiff, the Court believes that, even in a drug infested area, a reasonable officer would not have believed such extreme force would be reasonable against an individual that committed no violent crime, posed no safety threat to the officers or the public, and exhibited no resistance. *See Park v. Shiflett*, 250 F.3d 843, 853–54 (4th Cir.2001).

Defendants claim that, in deposition testimony, Plaintiff provided contradictory accounts of what force was used against him. The Court believes that the conduct described by Plaintiff does not represent mutually exclusive courses of action. The Court cannot say that, as matter of law, it would be unreasonable for a jury to conclude that Officer Ruffin threw Plaintiff to the ground, choked him while on the ground, assisted the other officers in beating Plaintiff, stood by as the officers continued the attack, and at some point during that incident, Plaintiff lost consciousness. Essentially, the evidence before the Court represents two conflicting versions of what transpired on the morning of July 21st. "Credibility of conflicting testimony is not, on a summary judgment motion, an issue to be decided by the trial judge." *Summerlin v. Edgar*, 809 F.2d 1034, 1039 (4th Cir.1987). *See also Shaw v. Stroud*, 13 F.3d 791, 804 (4th Cir.1994) ("[T]he credibility of a deposition is a question for the jury rather than an issue to be settled at the summary judgment stage.").

Defendants also argue that the injuries described in Plaintiff's medical records demonstrate that he could not have suffered the level of force alleged. On July 22, 1998, Mr. Solis sought medial treatment for left arm and head pain resulting from the alleged assault. Mr. Solis complained of pain in his mouth. The medical report noted multiple contusions and abrasions. A reasonable jury could find the noted injuries consistent with Plaintiff's account. Accordingly, the Court believes the evidence is sufficient to raise a genuine dispute of material fact as to whether the officers employed excessive force in arresting Plaintiff.

The Court's next inquiry is whether the contours of the Fourth Amendment were so clearly delineated that a reasonable officer would have known that the complained of conduct violated its prohibitions against excessive force. At the time of the incident, Fourth Amendment jurisprudence had clearly established a citizen's constitutional right to be free from beatings and strangulation where no criminal activity is afoot and the citizen posed no safety threat or active resistance to the officers. *See Kane v. Hargis*, 987 F.2d 1005, 1008 (4th Cir.1993). An officer in Defendant Ruffin's position would know that, in the absence of any suspected violent conduct or physical threat, grabbing a passive individ-

ual waiting for a ride to work, slamming him on the ground, choking him, and kicking him with the assistance of multiple officers would violate the Fourth Amendment's prohibition on the use of excessive force. Accordingly, the Court finds that Officer Ruffin has not established an entitlement to qualified immunity as to Plaintiff's Fourth Amendment claim.

### b. *Sixth Amendment—Right to Be Informed of Nature of Charges*

Plaintiff also alleges that Defendants deprived him of his Sixth Amendment right to be informed of the nature of the charges against him. Defendants maintain that the Supreme Court's dictate in *Graham* that excessive force claims are to be analyzed under the Fourth Amendment acts to preempt all other constitutional violations that may also arise from the same series of events. The Court finds such a proposition to be untenable in light of well-established precedent that the right to notice embodied in the Sixth Amendment is a distinct and independent right secured by the Constitution and applicable to the states under the Fourteenth Amendment. *See Faretta v. California*, 422 U.S. 806, 818, 95 S.Ct. 2525, 2532, 45 L.Ed.2d 562 (1975); *In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948); *Gray v. Raines*, 662 F.2d 569 (9th Cir.1981); *Spinkellink v. Wainwright*, 578 F.2d 582, 609, n. 32 (5th Cir.1978).

"The Sixth Amendment includes a compact statement of the rights necessary to a full defense:

'In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.'"

*Faretta*, 422 U.S. at 818, 95 S.Ct. at 2532 (quoting U.S. Const. amend. VI). "Because these rights are basic to our adversary system of criminal justice, they are part of the 'due process of law' that is guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States." *Id.*

"[I]t has been firmly established that a person's Sixth and Fourteenth Amendment right[s] ... attach[ ] only at or after the time that adversary judicial proceedings have been initiated against him." *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972). Adversary judicial criminal proceedings are deemed to have commenced after or at the time of a formal charge, preliminary hearing, indictment, information, or arraignment. *See id.*

Here, Mr. Solis alleges that he was beaten, arrested, and detained in a cell for 20—30 minutes before being informed that he was arrested under suspicion of drug activity. Ordinarily, a temporal delay of this nature between arrest and notification would not support a violation of the Sixth Amendment right to notice. *See Martin v. Malhoyt*, 830 F.2d 237, 261 (D.C.Cir.1987) (stating that "a four-hour delay between arrest and notice of the charges as more than a *de minimis* abridgment of Sixth Amendment"). Nevertheless, Plaintiff was ultimately charged with second-degree assault. It is unclear from the record at what time Mr. Solis was ultimately informed of the true nature of the charges against him. Under such circumstances, the Court believes that the Defendants have not shown an absence of a genuine dispute of material fact as to whether Mr. Solis properly was informed of the nature of the charges against him and, therefore, the absence of a Sixth Amendment violation.

Still, Plaintiff's Sixth Amendment claim against Officer Ruffin fails. The Sixth Amendment imposes no duty on an officer to give notice of the charges against the accused at the time of arrest. *See Jones v. City of Jackson,* 203 F.3d 875, 880 (5th Cir.2000) ("A defendant's right to be informed of the nature and cause of an accusation brought against him does not exist until the Government is committed to a prosecution."); *Kladis v. Brezek,* 823 F.2d 1014, 1018 (7th Cir.1987); *Martin,* 830 F.2d at 260–61; *Hardy,* 50 F.Supp.2d at 1185. According to the uncontradicted deposition testimony, Officer Ruffin's last contact with Plaintiff was signing him into the prisoner logbook at the police station. (Ruffin Dep. at 105). Thereafter, Plaintiff was placed in the holding center and taken before a commission. There is no evidence of his involvement at the commencement of the adversarial proceeding against Mr. Solis. Consequently, his actions did not violate the Plaintiff's Sixth Amendment right to notice. In the absence of an underlying constitutional deprivation by the executing official, there is no municipal liability. Therefore, the Court concludes that Defendants are entitled to summary judgment as the Plaintiff's Sixth Amendment claim.

c. *Fifth Amendment*

Plaintiff asserts that he was deprived of his Fifth Amendment right to due process. The Due Process Clause of the Fifth Amendment applies only to the conduct of the United States or a federal action. *See Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Jones v. City of Jackson,* 203 F.3d 875, 880 (5th Cir.2000). Plaintiff does not allege or present any evidence of federal involvement. Accordingly, the Defendants are entitled to summary judgment on this claim.

2. *State Claims*

a. *Maryland's Declaration of Rights*

"[I]t is settled beyond dispute that Maryland's Article [24] protects the same interests as the Fourteenth Amendment and therefore § 1983." *Davidson v. Koerber,* 454 F.Supp. 1256, 1260 (D.Md. 1978). Likewise, Article 26 of the Maryland Constitution is in *pari materia* with the prohibitions against unreasonable searches and seizures embodied in the Fourth Amendment of the federal constitution. *Bass v. State,* 182 Md. 496, 35 A.2d 155 (1943). Thus, "when a right protected under Maryland's Constitution is also secured under a companion provision of the U.S. Constitution, Maryland courts often have looked to federal cases interpreting the parallel federal provision." *Okwa v. Harper,* 360 Md. 161, 202, 757 A.2d 118, 140 (2000). Accordingly, the same facts that supported Plaintiff's § 1983 claim brought under the Fourth Amendment apply with equal force to Plaintiff's state constitutional claims. *See Okwa,* 360 Md. at 204, 757 A.2d at 141. "In Maryland, qualified immunity does not apply to constitutional claims." *Williams v. Prince George's County,* 112 Md.App. 526, 546, 685 A.2d 884, 894 (1996). *See Manikhi v. Mass Transit Admin.,* 360 Md. 333, 362, 758 A.2d 95, 111 (2000); *DiPino v. Davis,* 354 Md. 18, 51, 729 A.2d 354, 371 (1999). Therefore, Defendants' apparent assertion of qualified immunity for the alleged violations of Articles 24 and 26 of Maryland's Declaration of Rights is without merit.

b. *Intentional Infliction of Emotional Distress*

Plaintiff also asserts a claim of intentional infliction of emotional distress. "To establish the tort of intentional infliction of emotional distress, [the plaintiff is] obliged to show (1) that the conduct com-

plained of was intentional or reckless, (2) that it was also extreme and outrageous, (3) that it caused emotional distress, and (4) that the emotional distress was severe." *Pemberton v. Bethlehem Steel Corp.,* 66 Md.App. 133, 160, 502 A.2d 1101, 1115 (1986). Maryland courts have cautioned that the tort of intentional infliction of emotional distress should be imposed sparingly, and " 'its balm reserved for those wounds that are truly severe and incapable of healing themselves.' " *Figueiredo–Torres v. Nickel,* 321 Md. 642, 653, 584 A.2d 69, 75 (1991) (citations omitted).

Defendants assert that, even assuming Officer Ruffin's conduct qualifies as extreme and outrageous, the Plaintiff cannot demonstrate a severe emotional response resulting from the incident. "In order for distress to be sufficiently severe to state a claim for intentional infliction of emotional distress, 'the plaintiff [must] show that he suffered a severely disabling emotional response to the defendant's conduct,' and that the distress was so severe that 'no reasonable man could be expected to endure it.' " *Thacker v. City of Hyattsville,* 135 Md.App. 268, 315, 762 A.2d 172, 197 (quoting *Harris v. Jones,* 281 Md. 560, 570–71, 380 A.2d 611 (1977)). Thus, mere allegations of emotional trauma or humiliation are insufficient. *See id.; Jackson v. United States,* 77 F.Supp.2d 709, 715 (D.Md.1999). Plaintiff maintains that, as a result of the incident, he suffered severe emotional distress manifested through his inability to return to work for a few days. Nevertheless, Mr. Solis did return to work within days after the attack. There is no evidence that Mr. Solis cannot resume his normal life activities since the attack. In the absence of such evidence, the Court believes that the Defendants have shown entitlement to summary judgment on the intentional infliction of emotional distress claim.

### c. *Malicious Prosecution*

Plaintiff asserts a claim of malicious prosecution based upon the second-degree assault charge brought against him by Officer Ruffin. In Maryland, "[a] plaintiff must show the following to establish the tort of malicious prosecution: 1) the defendant instituted a criminal proceeding against the plaintiff; 2) the criminal proceeding was resolved in the plaintiff's favor; 3) the defendant did not have probable cause to institute the proceeding; and 4) the defendant acted with malice or a primary purpose other then bringing the plaintiff to justice." *Okwa,* 360 Md. at 183, 757 A.2d at 130. For purposes of the summary judgment motion, Defendants do not challenge Plaintiff's satisfaction of the first three elements. Instead, Defendants assert that Plaintiff has no evidence that, in charging Plaintiff with second-degree assault, Officer Ruffin acted with malice or a primary purpose other then bringing Mr. Solis to justice.

The Maryland Court of Appeals "has long held that 'the "malice" element of malicious prosecution may be inferred from a lack of probable cause.' " *Okwa,* 360 Md. at 188, 757 A.2d at 133 (quoting *Montgomery Ward v. Wilson,* 339 Md. 701, 717, 664 A.2d 916, 924 (1995)). *See also DiPino,* 354 Md. at 54, 729 A.2d at 373 (stating that the requisite "malice, though a separate element of the tort, may be inferred from the lack of probable cause"). As stated earlier, genuine issues of material fact exist as to whether Office Ruffin had probable cause to arrest Plaintiff. According to Plaintiff's account, he was simply standing outside his apartment awaiting a ride to work when Officer Ruffin attacked and arrested him. According to Plaintiff, the nature of the charges against him changed from drug-related to second-degree assault after he was de-

tained and no drugs were found in his possession. Under such circumstances, the Court declines to accept Defendants' invitation to ask more of Plaintiff than the Maryland Court of Appeals demands.[2]

### 3. Statutory Public Official Immunity

 Defendant Ruffin asserts that he is entitled to statutory qualified immunity as to any remaining tort claims. "In Maryland, public official immunity is recognized both at common law and by statute." *District Heights v. Denny*, 123 Md. App. 508, 516, 719 A.2d 998, 1002 (1998). "Maryland case law has affirmatively established that, while performing their duties, law enforcement officers are public officials and, thus, fall within the scope of qualified immunity as to their discretionary acts." *Williams v. Baltimore*, 359 Md. 101, 138, 753 A.2d 41 (2000). Section 5–507(b)(1) of the Local Government Tort Claims Act (LGTCA) specifically states that

> an official of a municipal corporation while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action.

Md.Code Ann., *Cts. & Jud. Proc.*, § 5–507(b)(1) (1998). For purposes of qualified immunity, Maryland courts define malice as conduct which is "motivated by ill will, by an improper motive, or by an affirmative intent to injure." *Shoemaker v. Smith*, 353 Md. 143, 164, 725 A.2d 549

(1999). *See DiPino v. Davis*, 354 Md. at 56, 729 A.2d at 374 (stating that the standard applicable under LGTCA as well); *Thacker*, 135 Md.App. at 290, 762 A.2d 172 (same).

Construing the facts in the light most favorable to the Plaintiff, the record reveals that, without provocation or resistance, Officer Ruffin choked Plaintiff and struck him multiple times for no apparent reason. Such unjustified application of malignant force may give rise to a reasonable inference that Officer Ruffin was motivated by ill will toward or an affirmative intent to injure Plaintiff. *See Okwa*, 360 Md. at 171–73, 757 A.2d 118 (finding malice where officers handcuffed plaintiff, threw him to the ground, beat him, and twisted his handcuffed hands by the thumbs); *Sawyer v. Humphries*, 322 Md. 247, 261, 587 A.2d 467, 474 (1991) (finding malice where officer threw rocks at plaintiffs, wrestled one to the ground, pulled his hair, and hit him in the face). Accordingly, the Court finds that a genuine dispute of material fact exists as to whether Officer Ruffin is entitled to public official immunity under § 5–507.

### D. Prince George's County

### 1. Governmental Immunity

 The County asserts that it is entitled to governmental immunity for the tort claims asserted in the amended complaint. "Counties are shielded from tort liability for governmental actions unless the General Assembly has specifically

---

**2.** The Court notes that "[a]n inference of malice, resulting from a negligent action, rather than one motived by true ill-will, cannot justify an award of punitive damages." *Okwa*, 360 Md. at 189, 757 A.2d at 133. "In a malicious prosecution action, the form of 'actual malice' which must be established for the recovery of punitive damages 'consists of an improper or wrongful motive in causing the initiation of criminal proceedings against the plaintiff.'" *Bowden v. Caldor, Inc.*, 350 Md. 4, 24, 710 A.2d 267, 276 (1998) (quoting *Montgomery Ward*, 339 Md. at 734, 664 A.2d at 932). Therefore, in order to sustain an award of punitive damages, Plaintiff must do more than simply establish a lack of probable cause.

waived the immunity of the municipality." *Williams,* 112 Md.App. at 553, 685 A.2d at 898. The LGTCA represents a limited waiver of a municipality's governmental immunity.[3] "The LGTCA, however, does not authorize the maintenance of a suit directly against the local government." *Williams,* 112 Md.App. at 554, 685 A.2d at 898. Thus, the Court concludes that, as the County is not subject to suit with respect to Plaintiff's common law tort claims, no genuine issue of material fact exists. Accordingly, the Court finds that the County is entitled to summary judgment as to the asserted common law tort claims.

■■■ "[U]nlike in an action for some common law torts, neither the local government official nor a local governmental entity has available any governmental immunity in an action based on rights protected by the State Constitution." *DiPino,* 354 Md. at 51, 729 A.2d at 371. "[I]f, tortious conduct is performed by a local government employee within the scope of employment and the entity does not have its own governmental immunity, it will be subject to suit without regard to any public official immunity possessed by the employee." *Id.* at 48 n. 6, 729 A.2d at 370 n. 6 (interpreting *James v. Prince George's County,* 288 Md. 315, 418 A.2d 1173 (1980)). *See also McCollum v. McDaniel,* 136 F.Supp.2d 472, 476 (D.Md.2001). Thus, "as a matter of common law, ... local governmental entities ... have *respondeat superior* liability for civil damages resulting from State Constitutional violations committed by their agents and employees within the scope of the employment." *DiPino,* 354 Md. at 51–52, 729 A.2d at 372. As discussed earlier, genuine

issues of material fact exist as to whether Officer Ruffin violated the constitutional protections afforded Mr. Solis under Maryland's Declaration of Rights. There is no dispute that Officer Ruffin committed that acts within the scope of his employment. Accordingly, the Court denies the motion for summary judgment with respect to the Plaintiff's state constitutional claims.

### 2. *Monell Liability*

■■■ Finally, the County argues that Plaintiff fails to provide a sufficient factual basis to support imposition of municipal liability under § 1983. Under *Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), section 1983 holds municipalities directly liable for constitutional deprivations only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury ...." *Spell v. McDaniel,* 824 F.2d 1380, 1385 (4th Cir. 1987). "Section 1983 plaintiffs seeking to impose liability on a municipality must ... adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson,* 15 F.3d 333, 338 (4th Cir.1994). Thus, "to establish liability on behalf of the entity, it must be shown that the actions of the officers were unconstitutional and were taken pursuant to a custom or policy of the entity." *Giancola v. State of W.Va. Dept. of Public Safety,* 830 F.2d 547, 550 (4th Cir.1987).

---

**3.** Under § 5–503(b)(1) of the LGTCA, "a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." Md.Code. Ann., *Cts. & Jud. Proc.,* § 5–503 (2001).

■ Plaintiff asserts municipal liability may be imposed against Prince George's County on three grounds. First, Plaintiff maintains that, even though officers were aware of the high concentration of Spanish-speaking residents in his community, the County failed to assign bilingual officers capable of communicating with the citizens. Even assuming the law imposes such a duty, according to Plaintiff's own account, Officer Ruffin attacked him without speaking a word. A plaintiff must demonstrate that the alleged injury "[w]ould ... have been avoided had the employee been trained under a program that was not deficient in the identified respect." *City of Canton v. Harris,* 489 U.S. 378, 391, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989). Construing the facts in the light most favorable to Mr. Solis, the Court cannot ascertain how any lack of bilingual skills on the part of Officer Ruffin caused the confrontation and ensuing arrest when Officer Ruffin made no attempt to communicate with Plaintiff.

■ Second, Plaintiff asserts that Prince George's County supported a custom of racial profiling of Hispanic males residing in drug infested areas, thereby subjecting them to detention and arrest without probable cause. Plaintiff's allegations of racial profiling may be sufficient to survive a motion to dismiss. *See generally Rodriguez v. California Highway Patrol,* 89 F.Supp.2d 1131 (N.D.Ca.2000); *Maryland State Conference of NAACP Branches v. Maryland Dept. of State Police,* 72 F.Supp.2d 560 (D.Md.1999); *Reyes v. Sazan,* 981 F.Supp. 973 (E.D.La.1997). However, on a motion for summary judgment, bare allegations unsupported by legally competent evidence do not give rise to a genuine dispute of material fact. *See Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) ("Unsupported speculation is not sufficient to defeat a summary judgment motion."). After having ample opportunity to conduct discovery, Plaintiff has produced an unsworn expert report to support his claim of racial profiling. As discussed earlier, such unsworn statements may not be considered on a motion for summary judgment.

■ Plaintiff also relies on statements in his own interrogatory answers. These statements merely recite legal arguments and Plaintiff's belief that the incident was the product of racial profiling. There are no facts based upon Plaintiff's personal knowledge that evidence a pattern or practice of racial profiling by the Defendants. "Although answers to interrogatories may be considered 'so far as they are admissible under the rules of evidence,' where such answers are not based upon personal knowledge, such answers have no probative force." *See Schwartz v. Compagnie General Transatlantique,* 405 F.2d 270, 273 n. 1 (2d Cir.1968). In the absence of contradictory evidence raising a genuine dispute of material fact, the Court concludes that municipal liability cannot be based upon on Plaintiff's claim of racial profiling.

■ Lastly, Plaintiff argues that Prince George's County failed to properly train and supervise officers in ascertaining probable cause before arresting or detaining individuals. In order to sustain a claim of failure to train or supervise, " 'plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.' " *Carter v. Morris,* 164 F.3d 215, 218 (4th Cir.1999) (quoting *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 411, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). "Thus, 'municipal liability will attach only for those policies or customs having a specific deficiency or deficiencies ... such as to make the specific violation

almost bound to happen, sooner or later, rather than merely likely to happen in the long run.'" *Carter,* 164 F.3d at 218 (quoting *Spell,* 824 F.2d at 1390). Plaintiff has failed to produce any evidence "of prior incidents and of official encouragement of exactly the same constitutional injury that he had suffered." *Carter,* 164 F.3d at 220. In the absence of evidence raising a genuine dispute of material fact as to the existence of a policy, practice, or custom of the County that caused the Plaintiff's constitutional injury, the Court finds that Prince George's County is entitled to summary judgment on the Plaintiff's Monell claim.

### III. *CONCLUSION*

For the reasons stated above, the Court will grant-in-part and deny-in-part Defendants' Motion for Partial Summary Judgment. An Order consistent with this Opinion will follow.

### *ORDER*

For the reasons stated in the accompanying Memorandum Opinion dated July 13th, 2001, IT IS this 13th day of July, 2001 by the United States District Court for the District of Maryland, hereby **ORDERED:**

1. That Defendants' Motion for Partial Summary Judgment [44–1] BE, and the same hereby IS, **GRANTED–IN–PART** as to: Count II (Negligence); Count V (§ 1983—Monell Liability & Fifth Amendment); Count VI (Assault & Battery); and Count VII (Malicious Prosecution); against Prince George's County and Count V (§ 1983–Sixth Amendment and Fifth Amendment) against Officer Peter Ruffin and Count IV (Intentional Infliction of Emotional Distress) against all Defendants and **DENIED–IN–PART** as to Count I (Negligence), Count III (False Imprisonment), Count VI (Assault &

Battery); Count V (§ 1983–Fourth Amendment); Count VII (Malicious Prosecution) against Officer Peter Ruffin; and Count VIII (State Constitutional Violations) against all Defendants; and

2. That the Clerk of the Court mail copies of this order to all counsel of record.